Stewart *vs.* Kerrison.

---

## STEWART *vs.* KERRISON.

A deed of conveyance of real estate to a trustee, in trust " to hold the said premises as a security " for certain creditors of the assignors, who had accepted the notes of the assignors for the principal of their debts, payable in two and three years, with interest, and such other creditors as should, within a limited time, accept the same terms, with power to sell or mortgage the property to pay off the notes: *Held*, to be an assignment for the benefit of creditors and not a mortgage.

The rents and profits accruing before the sale, were not, in terms, directed to be applied to the assignors' debts, and the assignors were allowed by the trustee to remain in possession of the assigned property: *Held*, That the assignment was fraudulent in law and void as against a creditor who had not accepted the terms stipulated for.

BEFORE CARPENTER, J., AT CHARLESTON, JUNE TERM, 1870.

Action by A. T. Stewart & Co., plaintiffs, against Edwin L. Kerrison, Herman Leiding and Charles Kerrison, defendants.

The case is stated in the decree of the Circuit Court and the judgment of this Court. The decree is as follows:

CARPENTER, J. The defendants, Kerrison & Leiding, merchants, residing and doing business in the City of Charleston, on the 26th of May, 1860, gave their note to the plaintiffs, who were citizens of New York, for $2,155.43, payable on the 26th December, 1860. This note was not paid at maturity, and there was due to the plaintiffs on the 1st June, 1865, not only the principal but interest, amounting to $670. Towards the close of the year 1860, the defendants purchased goods from the plaintiffs to the value of $15,-005.97, but this amount was reduced at the commencement of the late war, by the return of goods, to $5,870.

In April, 1861, Edwin L. Kerrison happening to be in New York, two suits were commenced against him, one upon the open account on which judgment was recovered against him in 1862, for $4,872 principal, and $615.22 interest, and the other upon the note above referred to, upon which judgment was entered up for $2,155.43

principal, and $151.96 interest. Some time towards the close of the year 1866, Kerrison & Leiding applied to their creditors, and to the complainants among others, to take their notes, dated the first of December, 1866, payable with interest from the first of June, 1865, in two and three years, in lieu and stead of their respective debts. All of the creditors agreed to the proposal, with the exception of Benkhard & Hutton, Lord & Taylor, Strang, Advance & Co., and the complainants, who were among the largest creditors of the firm, and whose claims amounted in the aggregate, as was stated at the bar, to be between forty and fifty thousand dollars.

On the first of May, 1867, Kerrison & Leiding conveyed all their real estate which, with the exception of their household furniture and other personalty, of inconsiderable value, constituted their entire property liable to execution, to their co-defendant, Charles Kerrison. The deed, after premising "that a majority of the creditors of Kerrison & Leiding, both in number and amount, or value, with a view to enable them, the said Kerrison & Leiding, to resume some mercantile trade or business, had agreed to take their notes, dated the 1st December, 1866, payable with interest from the first of June, 1865, in two and three years, secured by a conveyance to an approved trustee of the real estate thereinafter mentioned, and that all the other creditors of Kerrison & Leiding might be disposed to come in upon the same footing, in which event it was intended to secure them that right," conveys the real estate to the trustee upon the following trusts:

1. In trust to hold the real estate so conveyed as a security for the creditors who had agreed in advance to accept the provisions of the deed.

2. For such other creditors of Kerrison & Leiding, who at any time before the 1st December, 1867, should take and accept the notes of Kerrison & Leiding, dated 1st December, 1866, payable in two and three years, with interest from 1st June, 1865.

The deed directs the trustee, if the notes are not paid in the meantime by Kerrison & Leiding, to sell the assigned property in due time to provide for the payment of the notes as they should fall due, or to raise the sum required by mortgage, if practicable, or if he should deem it best for the interest of all, then to sell and dispose of the premises, or any of them, at any time after the execution and delivery thereof, as he might think proper, and to pay the proceeds of sale after deducting commissions, etc., to the holders of the notes.

Before the expiration of the time fixed by the deed, all the credi-

tors of Kerrison & Leiding accepted its provisions, with the exception of A. T. Stewart & Co., who instituted suit for the recovery of their debt in the Circuit Court of the United States. Judgment for $9,387.77, was entered on the 19th September, 1868, on which execution has issued and been returned "*nulla bona.*"

This bill has been filed to set aside the assignment to Charles Kerrison, which is said to be obnoxious to the Stat. 13 Elizabeth, which declares all conveyances "made with purpose and intent to delay, hinder or defraud creditors to be clearly and utterly void, frustrate, and of none effect." In *Cadogan & Kennett*, Cowp., 434, Lord Mansfield, commenting on the Stat. 13 and 27 Eliz., says: "These statutes cannot receive too liberal a construction, or be too much extended in suppression of fraud," and he further adds, that "if the transaction be not *bona fide*, the circumstances of its being for a valuable consideration will not alone take it out of the Statute." "It is very possible," says Ch. Dunkin, in *Jacot* vs. *Corbett*, "Mr. Corbett may not have conceived that he was doing an improper act, yet if he has done that, the intent and purpose of which was to hinder and delay his creditors, the law has affixed a character to the transaction and declared it as to such creditors void and of no effect."

It has long been a settled rule that a debtor in failing circumstances may, in the absence of any statutory prohibition, not only dispose of his property in trust for the use and benefit of his creditors generally, but may by such a conveyance give a preference in payment to one creditor before another, or to one class of creditors before another class. The temptation to the abuse or unequitable exercise of this power, and the facilities it affords for coercing creditors into a surrender of their legal rights and for reserving undue advantages to the debtor, through the services of a friendly trustee, have caused the Courts, while admitting the legality of the rule allowing preferences, to watch its application with jealousy, and to annex to it such qualifications as are calculated to prevent its operation from being oppressive and unjust. Among these there is none which is better established, or which has been more rigidly enforced, than that which forbids the debtor to encumber the assigned property with considerations beneficial to himself. Accordingly assignments providing for only a part of the creditors and directing the assignee to pay back or re-assign to the assignor the surplus which may remain after satisfying the debts provided for, or reserving to the debtor any part of the income or property for his own benefit,

have been repeatedly held to be fraudulent and void—*Goodrich* vs. *Downs*, 6 Hill, 438; *Strong* vs. *Skinner*, 4 Barbour's Ct. R., 546; *Lansing* vs. *Woodworth*, 1 Sand. Ch., 43; *Barney* vs. *Griffin*, 4 Sand. Ch., 552; affirmed on appeal, 2 Comstock, 365; *Leith* vs. *Holaston*, 4 Com., 211; *Jacot* vs. *Corbett*, Cheeves' Eq., 71. It makes no difference whether the surplus be large or small, or whether the reservation be express or implied. An assignment by a debtor for the benefit of a portion of his creditors, without a provision that the surplus should be distributed among all the creditors, has been held to be fraudulent by reason of the resulting trust of the surplus, even though it turned out that there was no surplus.— *Dana* vs. *Tull*, 17 Vermont, 390. This doctrine has been recognized fully in our own case of *Jacot* vs. *Corbett*. Says Ch. Dunkin, "A debtor has no right to place his property beyond the reach of his creditors under the ordinary process of the law, prescribe the terms on which they are to participate in his effects, and secure to himself, in case of neglect or refusal, a control over such funds, and thereby the power to make other terms. Such deed is a direct violation, as well of the terms as the policy of the statute. The purpose is to hinder and delay creditors by transferring a colorable title to a third person, while the real ownership is in the assignor, unless the terms prescribed are assented to. No case, I think, can be found sanctioning an assignment which sustains such control in the debtor."

Let us apply these principles to the deed now under consideration. The bill charges that no disposition was made by the assignment to Charles Kerrison of the rents and profits of the assigned estate, and that a trust as to such rents and profits therefore resulted to the assignors, who, with the assent of the trustee, had continued in the absolute control and enjoyment of the real estate.

The trustee, in his answer, disputes the correctness of this construction of the deed, and contends, " that Kerrison & Leiding had no interest in the assigned property until all the rents, profits and sales had been applied to the creditors secured and a surplus remained." He further states that though he entrusted the management of the trust property to Kerrison & Leiding, he took care to ascertain that an account of the rents and profits was kept, and directed their application to the current expenses of the property. He admits, however, that " he did allow his co-defendants to occupy houses they had formerly lived in, E. L. Kerrison for the whole time, and Herman Leiding for a period short of one year, without any dis-

tinct agreement as to rent." I need not consider which of these con-structions is correct; if the complainants', then the deed is vicious on account of the reservation of the income to the grantors. If the defendants', then the possession and control of the assigned property by the grantors is inconsistent with the terms of the deed, and raises an indisputable presumption of legal fraud.

"The root of the vice in all these cases," says Justice Nelson, in *Cunningham* vs. *Freeborn*, 11 Wendell, 240, "lies in the principle of preference. It affords the pretence for putting the property into the possession of a friendly trustee, and thereby may substantially secure to the debtor the control of it for a long time after the law presumes it to have passed from him, and his own possession would be incompatible with its security."

The case in hand affords a striking illustration of the justice of this remark. Here property is placed by insolvent debtors in the hands of a friendly trustee, who permits them to occupy a portion of it without "any distinct agreement as to rent," and to retain en-tire control of the balance "long after the law presumes it to have passed from them," and when the unsatisfied judgment of the plain-tiffs was a standing admonition that their control and enjoyment of the income "was incompatible with the security of the property." The retention by the debtor of property assigned to creditors in payment of or as a security for previous debts, has been held in this State conclusive evidence of fraud. The law upon this subject has been thus laid down by Ch. Harper, in *Smith* vs. *Henry*, 1 Hill, R., 16:

"The true view seems to me to be this: the law allows a debtor to give preference to one creditor over another, and this is giving latitude enough; but it will not allow him to secure an ad-vantage to himself at the expense of creditors, as the price of such preference. If a party indebted to several goes to one of his credi-tors and says, ' my whole property is not more than sufficient to pay you, I will give you the preference, however, and assign it to you, provided you will allow me to have the use of it for a stipulated length of time, or until I work out the debt,' and this is assented to by the creditor, this is fraud in both. The debtor gains what he is not entitled to at the expense of his creditors, and enjoys the prop-erty independently of them. And the favored creditor gains a pre-ference by enabling the debtor to commit this injustice to the rest. He gives a bribe for the preference. But if such a stipulation were made, it would be privately done between the parties, and incapable

of proof. When, therefore, a debtor has made an assignment to a creditor, who permits him still to retain possession of the property, and use it as his own, the law reasonably infers, and the inference is incapable of being rebutted by proof, that there was such a stipulation or understanding between them ; or if we could be sure there was no such express understanding, but that the debtor had assigned in a tacit confidence that he, to whom the preference was given, would show indulgence and permit the debtor still to enjoy the property, this would be done with a corrupt purpose, to which the creditor would make himself accessory by allowing the debtor to retain and use the property."

The possession and control of the assigned property by Kerrison & Leiding, with the consent of the trustee, and without any objection on the part of the preferred creditors, for so long a time after the law presumes it to have passed from them, and even after the maturity of the notes it was conveyed to secure, especially when coupled with the fact that the avowed object of the deed was to enable Kerrison & Leiding to resume business and work out their debts, would warrant me, upon the authority of *Smith & Henry*, in holding that this deed was the result of a stipulation or understanding between the assignor and the preferred creditors, that the debtor should be permitted to enjoy the property, and that this advantage was the consideration on which preference was given. Such a stipulation would be fatal to the deed. But it is not necessary that I should rest my decision on this ground alone.

Whatever may be the true construction of the deed as to the rents and profits, it is admitted on all sides that there was a resulting trust to the assignors after the payment of the preferred creditors. This, as we have seen, is sufficient to render the deed void. The case of *Jacot* vs. *Corbett*, Chev. Eq., 72, is decisive of this case. There the fraud complained of was that the deed had itself provided that the debtor should have a right to retain for his own use the assigned effects, after paying forty (40) per cent. on the debts due to a certain class of creditors; and it was held to be void on that account as a fraud in law. The provisions of this deed are substantially the same as those in the deed there set aside, and the decision must be the same. It cannot avail the defendants, that there is now no prospect that there will be any surplus after the payment of the preferred creditors. " The character of the transaction must be determined by the intent of the parties at the time, and not by subsequent events."—*Jacot* vs. *Corbett*. It is sufficient

to avoid the assignment that the grantor, at the time of its execution, contemplated a surplus which would revert to him after the payment of the preferred debts.—Burrill on Assignment, 180.

The complainant also insists that this deed of assignment is fraudulent and void, because Kerrison & Leiding owned a considerable property not included in it, and to enable a creditor to take the benefit of the assignment he is required by it to release a portion of his demand. It is clearly established not only by the recitals in the deed itself, but by the answer of the defendants, that Kerrison & Leiding retained in their hands personal property more than sufficient to have paid the complainants' entire debt, and an inspection of the deed will show, that the complainants were debarred from all participation in the assigned estate, unless they would consent to accept a percentage of their claim and release their debtors from all liability for the balance. It is true that a formal release is not exacted, but the requirement that the accepting creditors should relinquish their claim for the interest, which had accrued prior to June, 1865, and take the notes of Kerrison & Leiding, with interest from that time, " in full discharge of their respective debts," was as much the exaction of the surrender of a portion of their debt, as if they had been required to sign a formal deed of release, and the question is whether that vitiates the deed. Upon this point I entertain no doubt. It is well settled that in a general assignment of all his property, a debtor may stipulate for a release, but it is equally well settled that an assignment to a trustee of a part of the debtor's property, upon condition of a release, is void, such a condition in a partial assignment being regarded as oppressive, coercive and unjust as against creditors.—Burrill on Assignments, 95, and cases there cited. The creditors are entitled to the benefit of the whole estate of their debtor, of which they are not to be deprived by an arrangement which would present to them the alternate either to run the risk of losing everything, or to give their debtor an opportunity of enriching himself at their expense. Nor had Kerrison & Leiding the right to require their creditors, as the price of the security offered, to agree that they should have an indulgence of two and three years, and pay by installments prescribed by their debtors, or lose all benefit of the assigned property. The effect of such a provision in a deed of assignment is necessarily to gain time, by coercing the creditors who may come in, and to hinder and delay those who may refuse the terms of the deed. Indulgence cannot

be demanded at the option of the debtor, and on his own terms in any case, and still less where the assignment is only partial.

Had the scheme of this deed been carried out successfully, Kerrison & Leiding would have coerced their creditors not only into releasing a large portion of their claims, but also into granting an indulgence of two and three years on the balance, while they reserved to their own use more than sufficient to have paid the complainants in full. Can there be a doubt that a deed, so framed, was made with an intent to hinder, delay and defraud creditors. I use the terms "defraud" and "fraud" in their legal sense. I see nothing in the case to warrant the imputation of moral fraud.

It is ordered and decreed that the conveyance, dated the first of May, 1867, executed by Edwin L. Kerrison and Herman Leiding to Charles Kerrison, trustee, was made with intent to defraud the creditors of the said Kerrison & Leiding, and is void as against the complainants.

It is further ordered that the complainants recover of the defendants, Edwin L. Kerrison and Herman Leiding, the costs of this suit, and that they have leave to enter up judgment and issue execution for the same.

The defendants appealed, and moved this Court to reverse the decree and dismiss the bill.

*McCrady & Son*, for appellants:

The following propositions are submitted in support of this appeal:

1. That the conveyance in question was not a general assignment, nor in the nature of an assignment by insolvent debtors for the benefit of their creditors, but was a mortgage, or in the nature of a mortgage.

2. That if the said conveyance was an assignment, it was only a partial assignment, and, as such, was not void.

3. Whatever the conveyance may be called, it is not void under the Statute of Elizabeth.

4. That the said conveyance is a good mortgage or security for those who hold the notes it was given to secure, and they are entitled to the benefit of it.

There is not a word in the conveyance to justify the assumption that there was; and nothing in the transaction which can give it the character of such an assignment.

The word assign is not used in the deed.

The grantors were not then insolvent ; they warranted and cove-
nanted in a certain case to give further security.

There was no declaration, or even token of insolvency, but, on
the contrary, a positive assertion of purpose and ability to re-estab-
lish themselves in business after all the disasters of a destructive
war.

The circumstances of the transaction.

The conveyance was a mortgage, or a security in the nature of a
mortgage, and that in a form well recognized as a mortgage at the
present time.   Mortgages or securities in the form of conveyances
to third persons, as trustees, grew out of the effort to engraft upon
these securities the power to sell.   In the case of *Chowning* vs. *Cox*,
A. D. 1823, 1 Rand., 306, 310, a power of sale in a mortgage or
trust for the creditor himself to sell, was declared to be inconsistent
with the nature of a trust, and that a sale by the creditor under
such a power would not bar the equity of redemption.

In *Roberts* vs. *Bozon*, 1825, Lord Elden, according to Chancellor
Kent, (4 Kent Com., 150, discussing powers of sale in mortgagees,)
said :   " That the power of sale was of a dangerous nature, and
ought, for greater safety, to be placed in a third person as trustee
for both parties ;" and Ch. Kent goes on to say :   " And this ap-
pears to be still a practice, though it is considered as rather unnec-
essary and cumbersome ;" and cites an anonymous case from 6
Madd. Ch. Rep.

Hilliard in his Treatise on Mortgages, 1 vol., p. 90, says the
principle was established after great doubt and discussion.

It seems to have been recognized in England, however, fifty years
ago.

In the Court of Common Pleas, in the case of *Goss* vs. *Neale*, 5,
J. B. Moore, 19, 16 Eng. Com. L., p. 387, before Ch. J. Abbott:

The question was upon a deed to trustees for the benefit of cer-
tain creditors, and the trustees were empowered to sell at the ex-
piration of a certain time.

The C. J. held the deed to be good, and non-suited the plaintiff,
and upon a rule to set aside the non-suit, the rule was refused, be-
cause the Court were " of opinion that this deed did not differ from
the common case of a mortgage."

In the *Anonymous* case, 6 Mad. Ch. R., 15, 1821, referred to by
Ch. Kent, the whole case shows that, whether made to the creditor
or to a third person, it was still considered as a mortgage.—*Hill* vs.
*Mansen*, 11 Grat., 522.

In the cases of *Alton* vs. *Harrison*, and *Payser* vs. *Same*, Law Rep., 4 Ch. Ap., 622, certain hereditaments were conveyed to trustees for the benefit of certain creditors upon trust, to sell and apply the proceeds for their benefit. The Vice Chancellor Stuart, at p. 624, speaks of the deed as a mortgage, and Lord Justice Giffard, at p. 626, says of the deed: " It was in effect a mortgage not to become absolute for six months, unless process should be previously issued against the mortgagor."

. After giving the old definition of a mortgage, Hilliard, 1 vol., p. 2, says: "A more correct definition of a mortgage, therefore, would seem to be the conveyance of an estate by way of pledge for the security of a debt, and to become void on payment of it. Or, a conditional conveyance of land, assigned as security for the payment of money or performance of some other act, and to be void upon such payment or performance. Or an absolute pledge, to become an absolute interest, if not redeemed at a certain time." There is in these definitions no restriction of the conveyance to the creditor. Indeed, the most important and conspicuous mortgages of the present time are those of the railroads, which are invariably conveyances to trustees with power to sell.—*King* vs. *Merchants' Ex. Co.*, 5 N. Y., (1 Seld.,) 547; *Curtis* vs. *Leavett*, 15 N. Y., (1 Smith,) 207.

2. If the conveyance was an assignment it was only a partial assignment, and as such was not void.

That it was a partial assignment, appears from the deed itself.

And if it was only a partial assignment, it was not void.

Burrell on Ass., 97 : " In some of the States partial assignments are prohibited by Statutes; but independently of such prohibition, and where they leave the unassigned residue open to the claims of creditors, they are valid conveyances, and they have been so held in England."

The contrary of this is asserted in the decree, on the same authority; but in that reference the word "full" before "release" is not noticed. Burrell's authority is *Seavings* vs. *Brinkerhoff*, 5 John. Ch., 332, a reference to which will show that the ground of objection was that the creditors were required "to execute and deliver a complete discharge of their demands." The objection stands then entirely upon the bargain with the creditors who accepted, and the requisition upon others to take notes of the debtors bearing interest only from the first of June, 1865.

The first inquiry under this objection is, what were the complainants required to give up under this requisition?

In the deed itself there is no express requisition—but admitting that interest accruing during the war by the terms of the notes would be given up, there is not a solitary authority produced to show that such a requisition would avoid the deed. Nothing less than the requisition of a full release has ever been declared sufficient to avoid a partial assignment.—*Meux* vs. *Howell*, 4 East., 1.

Lord Ellenborough says: "It is not every feoffment, judgment, &c., which will have the effect of delaying or hindering creditors of their debts, &c., that is therefore fraudulent within the Stat.; for such is the effect *pro tanto* of every assignment that can be made by one who has creditors; every assignment of a man's property, however good and honest the consideration, must diminish the fund out of which satisfaction is to be made to the creditors. But the feoffment, judgment, &c., must be devised of malice, fraud, or the like, to bring it within the Statute.

3. Whatever the conveyance may be called, it is not void under the Stat. of Eliz. The particulars relied on are: (1.) The date of the notes excluding interest during the war. (2.) The time these notes were to run. (3.) Resulting trust of the rents. (4.) Occupation of some of the houses conveyed by the grantors. (5.) The relationship of the trustees to the grantors. Of these, in order:

(1.) As to the interest during the war. No question could have been more complex just after the cessation of hostilities. It was, in fact, a question of the broadest aspect, for it depended upon the manner in which jurists and statesmen should classify the great strife.

If classed as a war, there was no doubt the interest could not be recovered.—*Dickinson* vs. *Legare*, 1 DeS., 536, 542; *Exors. of Blake* vs. *Exors. of Quash*, 3 McC., 340, 343, 344; *Ryan* vs. *Baldrick*, Ib., 503; *Davis* vs. *Wright*, 2 Hill, 560, 568; *Du Belloux* vs. *Waterpark*, 1 Dowl. and Ry., 16, 16 Eng. Com. L., 12–13; *Hoave* vs. *Allan*, 2 Dal., 102; *Foxheart* vs. *Nagle*, Ib., 132–133; *Bordley* vs. *Eden*, 3 Harris and McH., 167–168.

But how the civil strife was to be classed was in doubt.—See the *Prize Cases*, 2 Black Rep., 635, 666, 667, 673, 693; the *Circassian*, 2 Wal., 135, 148, and *Alexander's* case, Ib., 419.

And this right to interest during the war is still a *questio vexata*. See *Mayer* vs. *Reed*, 37 Ga., 482; *Griffith* vs. *Lovell*, 26 Iowa, 226–4; American L. Rev., 743. How could the compromise of such a claim be construed to be a legal fraud?—*Ward* vs. *Smith*, 7 Wal., 447; *Bigler* vs. *Walter*, 5 Am. L. R., 570, by Chase, C. J.

But, in fact, the complainants in their suit for this very debt afterwards submitted to a verdict against them on this very question of interest.

(2 ) The time the notes were to run.

Is it a legal fraud for a debtor to obtain time by giving security to a creditor? The question seems to answer itself. Every day witnesses some such transactions. But some cases have been already cited where this point was decided. The case of *Goss* vs. *Neale*, 5 J. B. Moore, 19, (16 Eng. Com. L., 387,) seems to be in point; so also *Alton* vs. *Harrison*, 4 Ch. App., 622, already quoted. But in our own case of *Tennant* vs. *Stoney*, 1 Rich. Eq., 222, seems to give the answer to both the release of interest and extension of time. The bond, and what is called a mortgage, were given to trustees for certain creditors, by an indenture inpartite; the bond was not payable for four years; the damages on the bills were to be given up, and the interest to be allowed the creditors was to be only six per cent. Yet at p. 259–260, it is said that "to regard such arrangements as obnoxious to the stigma of fraud must cut up all securities and destroy that freedom which is essential to commerce."

And this is sustained and exemplified by composition deeds. There is not a printed form, that we know of, which does not contemplate the giving of time, and some other advantage, to the debtor.

In *Goss* vs. *Neale*, already cited, the creditors secured gave two years. In *Scott* vs. *Ray*, 18 Pick., 360, they gave five years.

A composition deed will be good although *all* the creditors have not joined in it.—*Eaton* vs. *Lincoln*, 13 Mass., 424; *Norman* vs. *Thompson*, 4 Exch., (Wels., H. & G.,) 755.

(3.) Resulting trust of the rents. No authority whatever is quoted to show that any trust could result under such a deed. The definition of a resulting trust, as given in the books, is "when a *voluntary* conveyance is made with a declaration of trusts as to a *part only* of the land or of the estate or interest in it, there is a resulting trust in that case for the grantor as to the part or interest of which there is no declaration."—1 Sanders on Uses, (3) p. 327.

1. This was not a *voluntary deed*, but one made upon good considerations, viz: a compromise of a doubtful claim and time, or forbearance, either of which would be sufficient to sustain it.

(2.) The whole estate was conveyed to the trustee, and the grantors could neither lease nor collect rent afterwards, but by his per-

mission and authority, and the trust declared was for the whole debt, and, until paid, there could be no resulting trust.

(3.) But the real question is this: If such a construction can be given to the deed, does that, *per se*, make it a fraud, although the rents, in fact, were received by the trustee for the benefit of the trust, and he offers to account for them?

(4.) Occupation of some of the houses by the grantors. .

. If the deed was good when it was made, certainly the subsequent conduct of the trustee cannot deprive the creditors who accepted of its benefits.

But the objection is made upon a total misconception of the law. Possession of the grantor unexplained may be a badge of real moral fraud; and as a badge, where real fraud is justly suspected, may warrant the conclusion. But where no real or moral fraud is imputed, but, on the contrary, excluded, then it weighs nothing whatever.

Very many cases may be cited to show that possession even under assignment is not conclusive evidence of fraud, or fraud *per se.* In *Baxter* vs. *Wheeler*, 9 Pick., 21, an express provision that the debtor making a general assignment might remain in possession, was not considered fraudulent.—*Foster* vs. *Sal. Co.*, 12 Pick., 451; *Scott* vs. *Ray*, 18 Pick., 360; *Tomkins* vs. *Wheeler*, 16 Pet., 106. This is a common condition in a mortgage, and in trusts in the nature of mortgages.—*Alton* vs. *Harrison*, 4 Ch. Ap., 622; *Johnston* vs. *Barratt*, Law Rep., 1 Exch., 65.

. But here the trustee is willing to account for the use and occupation of the premises, and this is all that those interested in the deed can require.

(5.) The relationship of the trustee. This may be, in some cases, evidence of actual fraud, but it is conceded here is no actual fraud. But there was a reason for making a friend a trustee, which is apparent on the face of the deed. He had to covenant that in a certain case he would have to come under a heavy responsibility.

4. That the deed in this case is a good mortgage or security for those who hold the notes it was given to secure, and they are entitled to the benefit of it.

This seems to follow, necessarily, from what precedes it, but it is proper to look at it in respect to the creditors who accepted. If there was no moral fraud in the deed, what is there to deprive them of its benefit?

They are all parties to the deed, and are certainly not even *charged*

with fraud of any kind in the bill of complaint, and how can their security be declared void?—*Head* vs. *Ward*, 1 T. J. Marshall, 281; *Meux* vs. *Howell*, 4 East., 1; *Tennant* vs. *Stoney*, 1 Rich. Eq., 259.

*Pressley, Lord & Inglesby*, contra:

This deed is void under statute of 13 Elizabeth, which declares all conveyances made with the purpose and intent to delay, hinder, or defraud creditors, to be entirely void, frustrate, and of none effect.

Before discussing the *provisions* of the deed, it is necessary to say something of its *character*. Is it an assignment or a mortgage?

Obviously employed for a double purpose. First, as a security for the debts provided for; Second, as a mode of provision for their payment.

The first trust requires the trustee to "*hold* the property as a security." This is a mortgage.

The subsequent trusts require him to sell the property and distribute the proceeds. This is an assignment; and the authority to sell before default, stamps upon the deed the character of an assignment.

"A mortgage with the qualities of an assignment superadded, or an assignment to take effect at a future day."—Burrell, 33.

Same principles applicable, whether an assignment or a mortgage. The whole question rests upon the *intent* of the instrument.

If this intent is to hinder and delay, it is void, whether mortgage or assignment.—Burrell on Assignments, 31; *Green* vs. *Tribier*, 3 Maryland, 37.

Under statute of Elizabeth, deed void—First, on account of the retention of the possession of assigned property by grantors; Second, on account of reservations in favor of grantors; Third, because it is a partial assignment, making preferences and requiring a release; Fourth, because it coerces the creditors to give the debtors an indulgence of two and three years upon claims long past due, under the penalty of being debarred from all participation in the assigned estate.

First—Courts of Justice have held, but with great reluctance, that a debtor may make an assignment giving preferences amongst his creditors. This power results from the absolute dominion of the owner over his estate. They have also held that he may stipulate for releases.

But when the debtor removes his property beyond the ordinary

process of law, and thus compels the creditor to stipulate something in favor of the debtor, as a condition of obtaining payment, the assignment will be deemed void, as hindering and delaying creditors, *unless the grantor has parted absolutely with the property, so as to leave no interest which can revert until the creditors* are paid in full.

The deed must therefore provide that, if one set of creditors do not take the property, it shall go to others, and finally to the general creditors.

The doctrine, as a text, may be seen in this sentence: " The circumstance of the debtor assigning over to trustees all his property without any reservation to himself, and giving the surplus, if any, to those creditors who do not come in and agree to release, on taking their preferred share, is deemed to disarm the transaction of all unfairness and illegality."

In *Jacot* vs. *Corbett*, Chev., 76, the Court says: " Doubtless a debtor may make a general assignment of all his estate for the benefit of his creditors. He may prescribe the order in which they shall be paid. I think, too, that he may prescribe the condition of a release; though if this were *res integra*, the Supreme Court have said in *Brashear* vs. *West*, 7 Pet., 'We are far from satisfied that upon general principles such a claim ought to be sustained.' But a debtor has no right to place his property beyond the reach of his creditors, under the ordinary process of law, prescribe the terms on which they are to participate in his effects, and secure to himself, in case of neglect or refusal, a control over such funds, and thereby the power to make other terms. Such deed is a direct violation, as well of the terms, as the policy of the statute. The purpose is to hinder and delay creditors, by transferring a valuable title to a third person, while the real ownership is still in the assignor, unless the terms prescribed are assented to. No case, I think, can be found, sanctioning an assignment which sustains such control in the debtor.—See *Heslop* vs. *Clark*, 14 John, 462; *Austin* vs. *Bell*, 20 John, 448.

It is immaterial whether this reservation in favor of grantor is expressed in the instrument, or left to implication.—Burrell, 180.

The case of *Jacot* vs. *Corbett*, is conclusive of this case.

That was an assignment by a debtor, for the benefit of such creditors as should accept a suitable proportion, but not to exceed forty per cent. of their claims; the surplus, if any, to be returned to the debtor. Held to be fraudulent.

Here the creditors are required to release their interest for seve-

ral years, amounting to at least twenty-five per cent. of their debt, and no disposition is made of the surplus.

It is, therefore, in effect, an assignment to pay such creditors as should accept a ratable proportion, but not to exceed seventy-five per cent. of their claims ; the surplus, if any, to be returned to the debtor—identical with Corbett, except that in this case, if the property did not bring enough to pay the seventy-five per cent., the creditors might go against K. & L. for the balance.

This, says Chancellor Harper, " in the Circuit decree on *Jacot* vs. *Corbett*, is obviously a device which, if successfully practiced, might enable a debtor to get rid of his debts by paying forty per cent. of the amount, and yet retain more property than would have been sufficient to pay the residue. Can it be doubted that this would be a fraud on creditors ? Creditors, who cannot know the situation of a man's affairs so well as he does himself, will be naturally alarmed by the fact of an assignment being made. The alternate is presented to them either to run the risk of losing everything, or to give the debtor an opportunity of enriching himself at the expense of creditors."

Assignors have not, therefore, in this deed parted absolutely with their property, etc., etc.

It cannot change the law, that the assigned estate is not likely to pay more than fifty per cent. of the debts of the accepting creditors. *Jacot* vs. *Corbet*, Chev., 74.

If this be a *mortgage*, the right of a mortgagor to the rents results from the very nature of the instrument.

If it be an *assignment* from the terms of the deed, for no power is given to the trustee to collect rents and profits or to apply them to the debts.

The manner of paying the debts is prescribed by the deed, to wit : out of the proceeds of sale.

The reservation that avoids a deed need not be of something permanent and durable; *if it be a part of the income* it is sufficient to avoid the deed.—2 Kent., 535, notes C and D.

In *Green* vs. *Treiber*, 3 Maryland, 36, the Court says :

" Applying these principles to the deed under consideration, we are brought to the conclusion that the Court below committed no error in condemning it as void. If it be regarded as an assignment for the payment of his creditors, on terms proposed by the grantor, it cannot be sustained, because instead of passing the property over to the trustees for the benefit of creditors, it is retained by the

debtor himself for six and perhaps fourteen months. During this time, the property would be protected from process issued at the instance of the other creditors, as well those not named in the deed as those who were named, and might not accept its terms."

It is not a satisfactory answer to say that the surplus as well as the income and profits would be liable in the meantime to be seized under such process.— *Green* vs. *Treiber; Jacot* vs. *Corbett*, Cheves, 77.

In the cases we have been considering, the reservation was on the face of the deed, but it is immaterial whether it be on the face of the deed or dehors the deed. *Partial assignments* with release void.

This is an assignment of a part of the debtor's property, in which a release of a part of the creditor's claim, to wit, the interest for nearly five years, is exacted.

The word "release" does not occur, but this is the effect of the deed.

Ordinarily the release is exacted only in case the assigned property is not sufficient to pay the entire debt. In this case the creditor is required to release, though the assigned estate is sufficient to pay all the debts in full.

In no event is he to be paid all that is due him; but if, on the other hand, the assigned estate pays less than the amount of the compromise, he has his recourse against K. and L. for the balance.

It would be monstrous to hold that a debtor may make a valid assignment, omitting property and stipulating for a release. What is the principle on which the Courts have proceeded in holding the stipulation for a release valid? It is this: That an honest debtor who gives up everything ought not to have his future industry cramped and restrained by a heavy load of debt. Did K. and L.'s future situation, supposing them to have retained $20,000 worth of property, require that their industry should be unfettered?—Burrell on Assignments, 95, 144–147.

"The fraud here consists in an artful combination of two things, each of which is in itself lawful; preferences given as the premium of releases exacted, and in the application of them to a case where the first thing demanded by justice, to wit, a full surrender of the debtor's property, has not been performed."—1 Rich., 219.

Because it exacts not only a release of a part, but an indulgence of two and three years upon the balance.

Giving time is delay, and if the intent was to cover up the property for the purpose of coercing creditors to give time, the deed must be void.

If a debtor with his property in his own hands, and open to the legal pursuit of his creditors, can satisfy them that it is for their interest to give time, there is no legal objection to it—they treat upon equal terms—the ordinary legal remedies of the creditor are not obstructed, but the case is materially changed where a debtor first places all his visible property in such a situation as to prevent his creditors from taking it under the process of a court of law, and then says give me two and three years' time, or run the risk of losing everything.

The very imposition of such a choice was a fraud, for it was exposing them to a peril which they were not bound to encounter.

Creditors who cannot know the situations of a man's affairs so well as he does himself, will be naturally alarmed by the fact of an assignment being made.

And for this reason the law does not tolerate any hinderance in assignments for the benefit of creditors beyond what may be reasonable and necessary to the purposes of the trust.—Burrell on Assignments, 188; 3 Maryland R., 37 and 38.

*Simonton*, same side.

The opinion of the Court was delivered by

WILLARD, A. J. The instrument which the decree of the Circuit Court has declared void, as against creditors, is a deed, in two parts, dated May 1, 1867, and recites, among other things, that it was made to enable the assignors, Kerrison & Leiding, " to resume mercantile trade or business; that it was based upon an arrangement with a majority of their creditors, both in number and amount or value, to take the notes of the assignors, dated December 1, 1866, payable, with interest from June 1, 1865, two and three years after said date, secured by a conveyance, to an approved trustee, of certain real estate thereby conveyed, in trust, for the better securing of the said notes." It declares that all the other creditors may be disposed to come in upon the footing of the said agreement and security, and, in that event, it is intended to secure to them that right.

The consideration is a nominal pecuniary sum, and the covenant of the trustee.

Certain real estate is bargained and sold to C. Kerrison, his heirs and assigns forever, " in trust, nevertheless, and to and for and upon the several uses, intents, trusts and purposes, and subject to the several provisoes, conditions and limitations hereinafter expressed

and declared, of and concerning the same." It then proceeds to declare the trusts, which are: First. To hold the premises as security for the creditors who had acceded to the terms of the assignment, and to such as, before the 1st of December, 1867, "in lieu and satisfaction of their claims, should take and accept the notes of the said Kerrison & Leiding, bearing the same date, 1st December 1866, payable at the same time, (two and three years after date), with interest from the same, (1st June, 1865,) each note for one half the principal due such creditors, as the creditors named in the first section of said schedule have taken and accepted," &c. Second. If the notes are not previously paid by the assignors, to sell at public auction, or private sale, the premises conveyed, or so much as may be necessary, or "to raise the sum required by mortgage," in due time to provide for the payment of the said notes as they shall fall due.

This power of sale was again repeated in less qualified terms, as follows: "or if he, the said Charles Kerrison, should deem it best for the interest of all, then to sell and dispose of the said premises, or any of them, at any time after the execution or delivery of these presents, as he may think proper, for cash, or on such credit as may enable him to meet the said notes at maturity; and if he should so sell for cash, or for cash and credit, before the maturity of the said notes, then, after paying and retaining all proper charges, expenses, and commissions, to pay the clear residue of the cash so received by him to the parties or holders of the said notes in average and proportion to the several and respective amounts due upon the said notes," &c.

It contains a covenant of warranty, and, also, a covenant relative to procuring a renunciation of dower affecting the premises.

The decree of the Circuit Court adjudges the instrument void as to creditors, for matters appearing on its face. The appellants contend that the decree erroneously applies to this instrument, as a test of its validity, or sufficiency in point of law, the principles and rules of law governing assignments, general and partial, made by debtors, either insolvent or in failing circumstances, for the benefit of their creditors.

They contend that it is to be considered as a mortgage, or security in the nature of a mortgage, and as such is not subject to the objections affecting the validity of assignments for the benefit of creditors.

The cardinal feature distinguishing assignments of this class from

mortgages, is the nature of the interest remaining in or resulting to the assignor on the one hand, and the mortgagor on the other.

An assignment for the benefit of creditors, in the form most common in practice, is a conveyance to a trustee or trustees creating express trusts in behalf of some or all of the creditors of the assignor. The title to the property assigned, whether consisting of real or personal property, passes wholly out of the assignor, and vests in the assignee, with all the powers incident to the proprietorship of such property, such as the power to sell and convey, subject only to the limitation imposed by the instrument, or incident to the relation of trustee. Its object is to devote the assigned estate to the payment of debts of the assignor, by placing it in the hands of trustees in a course of distribution. The object of interposing trustees between the debtor and his creditors is to withdraw the assigned estate from liability to be subjected to process under the control of individual creditors for the satisfaction of their demands. Ordinarily, the enforced application of a debtor's property to the satisfaction of his liabilities is left to the operation of remedies taken by individual creditors, without regard to the claims of other creditors, and unaffected by any equities or considerations of natural justice, that may exist as between different creditors, or classes of creditors, in relation to the common fund, to which all must look for satisfaction.

Under the operation of the strict rules of the common law, the creditor who first reaches the fund has the superior claim to it.

Bankrupt and insolvent laws take into account the rights and equities of creditors, as a class, as among themselves. They are to be regarded as affording statute remedies of a special character, and as ordinarily only operating within the sphere of the cases brought within the terms of such statutes, and not as repealing or modifying the operation of common law remedies when the peculiar jurisdiction not obtained under them is not operative.

The equities existing among creditors, as a class, are sometimes administered by the Courts of Equity, when the character of assets can be imposed upon the estate of the debtor, in which case these Courts proceed to distribute them, either as legal or equitable assets, as the case may be, having regard to equality as the leading idea of equity, although respecting legal heirs.

But the remedies afforded by bankrupt and insolvent laws, and by Courts of Equity, are to be regarded as exceptional; the rules and principles of the common law are to be looked to, in order to

measure the right of the debtor to establish principles peculiar to himself as the rule of applying his property to the satisfaction of the demands of his creditors.

The rule of the common law, allowing to execution creditors priority of their respective process, does not profess to cover a principle of distribution of such intrinsic excellence as to exclude all other principles or methods of distribution. It is a mere rule of practice, based on convenience, it has often been said, to put creditors on a race of diligence; but that race is more often won by the hard hearted or the lucky adventurer than by diligence, seasoned with mercy.

Until interfered with by process, the debtor may, within the limits of good faith, make any application of his estate toward the payment of his debts that he may choose.

This is not a right or privilege that he enjoys as debtor, but results from proprietorship. When, however, insolvent, or in failing circumstances, if he desires to control the application of his estate, he must divest himself of such estate, so that it shall be beyond the reach of process affecting him individually, and, at the same time, impress upon the estate itself, considered as a fund, a law governing its application.

The creation of a trust affords the means of accomplishing these ends. It accordingly follows, that to every assignment by an insolvent debtor, or debtor in failing circumstances, for the benefit of creditors, a two-fold object must be ascribed: first, to remove the assigned estate from liability to the process of creditors; and, second, to devote it to the payment of debts according to a rule prescribed by the assignor.

It is obvious, therefore, that every such assignment must, to some extent, hinder and delay creditors. That effect may result incidentally as a consequence of a lawful effort on the part of the debtor to devote his property to the payment of his debts, though upon a principle of distribution originating in his own mind. In that case, the creditor whose remedies are defeated, has no right to complain.

On the other hand, that hindrance and delay may be the direct object of the assignment, the motive therefor being some advantage to be gained to the debtor, or injury done to the creditor. In this case the law adjudges the effort to hinder and delay a fraud on the rights of creditors and avoids the instrument.

From the foregoing, it is obvious that provisions in such an as-

signment, whether in the form of reservations or conditions tending to divert the assigned estate from application to the payment of debts, or to clog or embarrass that application, for the benefit or advantage of the assignor, are inconsistent with the object which the law regards as a justification for the incidental hindrance and delay thereby occasioned to creditors.

It also follows that the possession by the assignor of the assigned estate after such assignment, for a longer period than might be necessary in order to place the trustee in possession, and the enjoyment by the assignor of the income and profits of the assigned estate, would be wholly inconsistent with the objects of the assignment.

In case of a mortgage by a debtor to secure a pre-existing debt, the effect of the mortgagor's retaining possession of the mortgaged premises is very different. In that case the object is security, not distribution.

The power of sale is not absolute, but dependent on condition broken. The mortgagor of land is not only entitled, apart from stipulation to the contrary, to possession of the mortgaged premises, but to enjoy the rents and profits without account until condition broken.

He has an equity of redemption, which is so far considered a legal estate that it may be levied upon and sold under execution.

What the mortgagor has obtained is less than what he would have obtained by a confession of judgment; his priority is not only confined to the mortgaged lands, but cannot ordinarily be made available without a judgment or decree as the foundation of proceedings for the sale of the land.

The application of these means of distinguishing the character of the deed in question is affected by the fact, that if that deed is to be regarded as a mortgage, it is not in the form most common, but belongs to a class having, in some respects, peculiar attributes, viz: mortgages to trustees for the security of one or more persons occupying the position of *cestui que trust* to the estate.

It is enough for the present to say that a trust, as between the several persons formally and beneficially united under the character of mortgagee, does not necessarily affect the relations between the mortgagor and mortgagee as they exist under the more common form of mortgages.

Looking, then, into the deed in question, we find that the relations established by it, as between the assignor on the one hand, and the trustee and beneficiaries on the other, are not characteristic of a

mortgage, but are such as to bring the deed within the principles and rules governing assignments by debtors insolvent or in failing circumstances.

In the first place, the deed is not, in form, a mortgage. A mortgage, strictly considered, is a sale and conveyance, subject to a condition or defeasance. It contains, within itself, that which may, on a prescribed contingency, terminate all the rights intended to be created by it. The condition binds the mortgagor to do something of advantage to the mortgagee, in order to divest the mortgagee of the estate and right formally conferred upon him.

The deed in question has no such characteristics. The only condition stipulated is one with which the crediter must comply before he can enter the relation created as between the assignor and trustee. The power of sale conferred upon the trustee is not dependent on condition broken, but is absolute; he may sell and give title at any time after the execution of the assignment at his discretion, if he judges it the best means of insuring the payment of the notes at maturity. He is not even allowed to postpone the sale until the renewed notes fall due, but must sell in advance, so as to be ready with the money in hand to pay the notes as they mature.

Neither is it, in substance, a mortgage, or in the nature of a mortgage. The absolute nature of the power of sale is as inconsistent with the substantial rights existing under a mortgage, as with its form as such. It is true that the declared object of the instrument is security, but that is not decisive, for security can be reached by other means than a mortgage, and is always an incidental object in assignments for the benefit of creditors. It is the fact that it is security coupled with a certain amount of right remaining in, and exercisable by the mortgagor, that characterizes the mortgage, while, in the present case, the assignor, if not divested of all title and control over the assigned property by the mere execution and delivery of the assignment, may be so divested at the mere option and discretion of the trustee at any moment.

The right remaining in the assignor, if right it can be regarded, is of too precarious a nature to be regarded in the law as a vendible estate or equity of redemption.

The power conferred upon the trustee to mortgage the assigned estate is inconsistent with the idea of a mortgage. As mortgagee, the trustee has no capacity to bind the estate by a mortgage. Nor can the power to mortgage be regarded as a naked power, conferring mere authority to act as attorney in fact for and in the name of the

assignor.   In the first place, no such intention is expressed, it being
evidently intended that the trustee should convey or mortgage as
trustee.   Again, the power to mortgage is coupled with the power
to sell, and the title is placed in the trustee, clearly designed to be
attendant on the exercise of these powers.   The conveyance being
in form absolute, and the powers conferred requiring an absolute
estate to support them, it would be an inadmissible construction to
limit the operation of the instrument so as to afford no support to
the powers.   Especially is this true when the grantee takes as trus-
tee, and a resulting trust may arise to prevent the extension of these
powers beyond what is required for a full discharge of the uses and
trusts.

On the other hand, the form of the instrument, its substantial
provisions, and its objects and intent, as viewed in the light of
attending circumstances, clearly define the deed in question as ap-
pertaining to the class of assignments under consideration.

The deed is, in form, a deed of trust, by its terms investing the
assignee with a fiduciary character.

It devotes a specified fund for the payment of debts.   It author-
izes the trustee to convert the fund at any time from land into
money or credit, without waiting for any default or want of per-
formance on the part of the assignor.   It is for the benefit of all
creditors who may choose to comply with its terms.

Under the stipulation forming part of the case before us, we are
bound to consider as established the fact that the assignors were
insolvent at the time of the assignment, that fact being ascertained
by the decree of the Circuit Court.   The motive of the assignment
is declared by that instrument to be to enable the assignors to re-
sume mercantile business.

The leading object of the assignment is to secure forbearance
upon the existing demands of their creditors.   The basis of the
transaction is a contract previously made with a majority of their
creditors, by which they agree to cancel and discharge the existing
obligations, and to take notes for the principal, with interest from a
date fixed by the agreement, independently of the date from which
such debts originally carried interest, and to give an extension of
two and three years.   The provisions made by the assignment are
not limited to securing the obligations contemplated by this agree-
ment, but are extended to all creditors who may choose to become
parties thereto.   Mortgaging the land to secure the creditors who
had already become parties to the agreement, though a majority in

19

interest, it must be assumed, would not have accomplished the professed object of the instrument, namely, enabling the assignors to resume mercantile business. It is obvious that it was considered that all, or nearly all, should become parties to the arrangement, to accomplish that object, and the deed, in its present form, must be regarded as presenting a motive to those who had not already acceded to the arrangement to do so. The character of that motive, and its effect upon the validity of the assignment, is to be considered in another connection.

It is clear that the object of the transaction called for something more than a mortgage could afford, and taken in connection with the situation of the parties, stamps the instrument as an insolvent assignment for the benefit of creditors.

It only remains to consider the objections made to the decree as to the validity of the assignment, as such. The fact pressed by the appellants that this, if regarded as an assignment, is a partial, and not general, assignment, is immaterial under the view of the case that is regarded as decisive of its merits.

The important objection to the validity of the assignment is, that it has, as a leading object, the securing of a benefit to the debtor at the expense of his creditors. It seeks time and the settlement, favorable for the debtor, of a question of difference between the debtor and his creditors, or at least of some of them, as to whether interest ran on interest-bearing accounts as between debtors resident within, and creditors residing without the Confederated States during the late war of rebellion.

The questions arise: first, whether an insolvent assignment is avoided by stipulations for the benefit of the debtor, at the expense of his creditors; and, second, whether such benefits are stipulated for in the instrument in question.

In *Jacob* vs. *Corbett*, (Chev. Eq., 71,) Chancellor Dunkin, whose opinion was adopted by the Appeal Court, quotes with approbation the language of Judge Van Ness, in *Hyslop* vs. *Clark*, (14 John. R., 458,) as follows: " An insolvent debtor has no right to place his property in such a situation as to prevent his creditors from taking it under the process of a Court of law, and to drive them into a Court of Equity, where they must encounter great expense and delay, unless it be under very special circumstances, and for the purpose of honestly giving a preference to some of his creditors, or to cause a just distribution to be made amongst them all." This language has the merit of disclosing the true principles that

should be made the test of the validity of an insolvent assignment.

The deductions from it are, that to justify the hinderance and delay necessarily incident to placing the estate in the hands of trustees, it must appear to have in view one or the other of the objects indicated, either to secure a preference, or to cause a just distribution among them all. Is this a correct expression of the law of this State, as settled by judicial authority, or as a consequence of principles applied by the Courts?

In *Jacot* vs. *Corbett*, Chev. Eq., 71, the assignment had a two-fold object: first, the preferring of certain creditors who were to be paid in full ; and, second, the payment to all other creditors of forty per cent. of their demands, who would accept that amount and release their demands, any surplus that remained to be paid to the assignors. This assignment was held void.

This decision is in entire conformity to the principles drawn from the language of Judge Van Ness, for, although the first object, a preference of certain creditors, was allowed, yet the second object embraced neither the principle of a lawful preference nor that of equal distribution. In order to have limited the authority of the case to merely giving effect to the language quoted, it would have been sufficient to have held that the assignment lacked an element necessary to its validity, namely : the principle of equal distribution when assuming to apply the assigned estate to creditors who were not intended to be preferred. But the decision in that case was not placed on merely negative grounds alone, but upon the distinct ground that the assignor had reserved to himself that which the general creditors failed to secure by releasing, and thereby rendered the assignment void.

The language of Judge Spencer, in *Austin* vs. *Bell*, 20 John. R., 448, is quoted in *Jacot* vs. *Corbett*, as follows : " I am bound to say that a deed which does not fairly devote the property of a person overwhelmed with debt to the payment of his creditors, but reserves a portion of it to himself, unless the creditors assent to such terms as he shall prescribe, is in law fraudulent and void as against the statute of frauds, being made with intent to hinder, delay and defraud creditors of their just and legal actions." It will be observed, that in this language the want of devotion to the payment of creditors is recognized as the basis of invalidity, although particular stress is laid on the case of a reservation for the benefit of the assignor.

Had the assignment in *Jacot* vs. *Corbett*, instead of providing for retaining to the assignor the balance remaining in the hands of the assignee in consequence of the refusal of the general creditors to release on the acceptance of part of their demands, directed that such balance should be paid to a public charity, it is evident that that circumstance, while it might have changed the language of the case and the class of illustrations resorted to, would not have changed the principles of the case nor the result of their application to the assignment. It is not the fact that the assignor secures a benefit to himself, but the fact that the fund which ought to go to creditors is diverted from that application, that works prejudice to the creditors.

*Jacot* vs. *Corbett* clearly rests on this idea. It is from this idea of diversion also that the principles laid down by Judge Van Ness are deduced. An insolvent assignment that divests a debtor of leviable property, except for the purpose of applying it to the payment of creditors, either on the principle of preference or of equality, must be regarded as a diversion of the fund from its legitimate uses, and when that diversion is coupled with a benefit intended for the debtor, the impropriety of the transaction is made clear to the ordinary sense of justice.

*Jacot* vs. *Corbett* also holds that where any one of several purposes or objects disclosed by the assignment is inadmissible, the whole assignment is avoided.

A debtor, though insolvent, may convert his lands or his goods into cash, or even into credits or choses, and one dealing with him, in this respect, in good faith, is entitled to protection as a *bona fide* purchaser for value, so he may part with it to a creditor, either directly or through the medium of a trustee, and, in so doing, he may prefer one creditor to another. As was said in *Smith* vs. *Henry*, (1 Hill, 16,) " this is giving latitude enough, but it will not allow him to secure an advantage to himself, at the expense of creditors, as the price of such preference."

In the case last named it was held, that when a debtor transferred property to a creditor by way of preference, and the creditor allowed the property to remain in the possession of the debtor, the law raised an implication that could not be rebutted, that the preference conferred was upon the condition that the debtor should be allowed to remain in possession for a time, and that such a stipulation rendered the transaction void as to creditors.

The discussion of the question by Judge Harper discloses principles in entire harmony with the views of Judge Van Ness. The

result of the reasoning is, that the only advantage, personal to himself, that the debtor has a right to secure, even when dealing with his creditors directly, is what is properly embraced within a fair exercise of the power of preferment. When the dealing with the creditor is through the medium of a trustee, this rule is equally applicable. This is, in effect, limiting the power of an insolvent debtor in assigning his property for the benefit of creditors, to either a preference of certain creditors, or equal distribution among them all, or to a preference of some and equal distribution among the rest.

The same conclusion was arrived at in *Anderson* vs. *Fuller,* (McM. Eq., 27.) That was, also, the case of a preferred creditor, suffering part of the property to remain in the possession of the debtor. Ch. Dunkin holds, in that case, that if, in preferring a creditor, the debtor secures "any advantage or control to himself, this provision invalidates the deed." Again, he says: "The circumstance of leaving the debtor in possession of the property supplies the place of a provision to that effect." The law presumes an understanding between the parties; infers the existence of a secret trust, and, so far as the rights of creditors are affected, the deed is void. On appeal, the views of Ch. Dunkin were approved.

The New York cases have generally adhered to the doctrine advanced by Judge Van Ness. Judge Sutherland, in *Grover* vs. *Wakeman,* (11 Wen., 187,) shows that it has been sanctioned by many of the ablest jurists of the country.

Previous to *Grover* vs. *Wakeman,* the principles upon which the Courts of this State, and those of the State of New York, administered this branch of the law, were substantially identical. *Hyslop* vs. *Clarke,* (14 John. R., 458,) *Leaving* vs. *Brinckerhoff,* (5 John. Ch., 329,) and *Austin* vs. *Bell,* (20 John. R., 442,) are clear expositions of the principles recognized and applied by our own Courts.

On the question as to what should be deemed a legitimate exercise of the power of preference, *Grover* vs. *Wakeman* assumed the position that conditions annexed to a preference that the creditor should release, avoided the deed upon the ground that it was a stipulation for the benefit of the debtor that might be employed to coerce creditors. Our Courts, from *Molin* vs. *Douglass,* (2 Hill Ch., 448,) have adopted the opposite view. The inclination of the New York Courts, beginning with *Grover* vs. *Wakeman,* has been to reduce insolvent assignments to close approximation to one unvarying form. Thus, in *Barney* vs. *Griffin,* (2 N. Y., 365,) it was

held that when a preference had been created, but no disposition of the residue made for other creditors, the assignment was void, and, also, that authority conferred on the assignee to sell on credit, or to receive a fixed commission, avoided the deed.

This inclination was developed while the highest Court of that State consisted, in part, of the members of the upper branch of the Legislature, a circumstance that, doubtless, weighed in a question that involved the handling of a delicate legal question with legislative freedom.

*Molin* vs. *Douglass*, 2 Hill Ch., 448, allowed the condition of releasing to be annexed to the preference. *Gadsden* vs. *Carson*, 9 Rich. Eq., 252, limits this right of exacting a release as the condition of preference to the case of an assignment by a debtor of all his property. In the New York Courts the discussion of this question turned chiefly on the impolicy of leaving in the hands of the debtor a power so susceptible of abuse; while in our Courts it was discussed from the standpoint that inasmuch as a debtor had a right to prefer or not to prefer, he had the constructive right to attach to its exercise such conditions as in themselves did not disclose a fraudulent intent. It may, perhaps, be safe to say, that the question of the propriety of allowing such a condition was influenced by the idea that there is a propriety in the demand of a debtor to be released on the surrender of his whole estate; a principle that is certainly recognized in most bankrupt laws.

While the debtor would be permitted to withdraw his property from an unpreferred creditor upon any such grounds, it might be said that there was sufficient force in it to warrant his making it the condition of a preference purely voluntary on his part, especially as unpreferred creditors could not possibly be prejudiced by it.

In *Molin* vs. *Douglass*, no provision was made for general creditors, and yet the assignment was held not to be invalidated on this ground.

That assignment was supported by preferences, held to be legitimate. It was held to be no objection to the assignment that a trust might result to the assignor before the payment of all debts, inasmuch as the remedy of unpaid creditors is to be let into an account of the surplus in the trustees' hands. This decision is certainly in closer conformity to the rule laid down by Judge Van Ness, than the opposite decision in *Barney* vs. *Griffin*. That rule sustains the assignment if either of the objects enumerated is the purpose of the assignment. Now, the assignment in *Molin* vs. *Douglass* contained

already one of those objects, and, therefore, was good under the rule in question. *Barney* vs. *Griffin* has to be tested by some other standard than that afforded by Judge Van Ness' rule. In point of fact, the resulting trust can be regarded in no other light than as an incidental consequence, brought about by the rules of equity, of an act done by the debtor which he had a right to do, namely, prefer certain creditors. In *Vaughn* vs. *Evans*, 1 Hill. Ch., 414, it was held that power to sell on credit did not vitiate the assignment. The conclusion from our own decisions, supported in great measure by those of New York, especially by the earlier decisions of that State, is that an assignment by an insolvent debtor, or by one in failing circumstances, whether general or partial, is to be regarded as tending to hinder, delay and defraud creditors, unless its whole purpose is either preferring certain creditors, or an equal distribution among all ; that a reservation for the benefit of the assignor of any interest in, or control over the assigned estate, or the income or profits thereof, avoids the assignment ; that if the assignor is allowed to remain in the possession or control of any substantial part of the assigned estate, after the assignment, the law infers a secret trust for the benefit of the assignor, which cannot be rebutted, and avoids the assignment. Tested by these rules, the assignment is clearly void.

Its object is not the preference of certain creditors, for its benefits and provisions apply equally to all ; nor does it seek equal distribution among all, for the right of the creditor to participate depends upon his assent to an alteration of the character and terms of his demand as a condition of enjoying such participation ; it stipulates an advantage for the assignor to the detriment of the creditors. Finally, it is to be regarded as covering a secret trust for the benefit of the assignors, evidenced by the fact that the assignors were allowed to remain in possession and control of the assigned premises, and to enjoy the rents and profits thereof. The appeal should be dismissed, and the decree of the Circuit Court affirmed.

*Moses*, C. J., and *Wright*, A. J., concurred in the result.