### CLAFLIN & CO. v. ISEMAN.

1. An assignment for the benefit of creditors in which an interest is reserved to the assignor without provision for the payment of all his debts, is fraudulent.

2. An assignment for the benefit of creditors, *giving preferences to such* creditors as shall accept and release, but making no provision for non-accepting creditors, and directing that the assignee should, "after the payment of all the creditors who accept, pay over the balance to me, if any balance should remain in his hands," is null and void, as well under the law as it existed prior to 1882 as under section 2014 of General Statutes; and it may be vacated by a non-accepting creditor, notwithstanding no actual fraud was intended and the demands of the creditors who accepted far exceeded the assets of the assigned estate.

3. A non-accepting creditor having successfully assailed this assignment,

after judgment against the assignor and return of *nulla bona*, he is entitled to be paid first out of the assigned estate.

4. Petition for rehearing refused, it not bringing to the attention of this court any material fact or important principle that was overlooked in the decision of the case.

Before WALLACE, J., Marion, June, 1884.

The opinion states the case. The order of Judge Hudson, granting an interlocutory injunction, omitting its statement of the case, was as follows:

Under a rule to show cause, the application for a preliminary injunction was heard by me at chambers at Orangeburg, on the 16th day of May instant. The arguments for and against the application were very full and exhaustive, leaving nothing for me to do but to review some of the leading authorities relied on by the opposing counsel. This I have endeavored carefully to do before determining the motion, not desiring to act hastily in a matter involving large pecuniary interests.

\*       \*       \*       \*       \*       \*       \*

The deed of assignment is assailed as being fraudulent on its face, by reason of the benefit reserved, or intended to be reserved, to the debtor in and by the aforesaid third clause of the trust.

Is it lawful for an insolvent debtor to assign his property for the benefit of such creditors alone as shall, within a given time, accept a *pro rata* share of the debtor's property in full payment of their respective claims, on condition that an absolute release in writing be delivered to the debtor of the entire debt, excluding from all share in said estate such as do not accept the terms of said deed, and directing the surplus, if any, to be paid to the assignor? Can a debtor lawfully propound such terms to his creditors, and remove his estate entirely beyond the reach of such of his creditors as do not accept? [Here the learned judge cited and quoted from *Vaughan* v. *Evans*, 1 *Hill Ch.*, 415; *Niolon* v. *Douglas*, 2 *Id.*, 443; *Jacot* v. *Corbett*, *Chev. Eq.*, 71; and *Stewart* v. *Kerrison*, 3 *S. C.*, 266.] I think, therefore, that I may say that it is settled law in this State that if an insolvent debtor assign his property in trust to pay such credi-

tors only as accept under the assignment, and executes an absolute release to the debtor, and directs the surplus, if any, to be paid to himself instead of the creditors refusing to accept, such a deed is on its face fraudulent and void, under statute 13 Elizabeth.

It is true that in all the cases cited and relied on by the plaintiffs' counsel, there seems to have been some additional vice, some other obnoxious provision, in the deed of assignment besides the mere reservation of the surplus to the debtor. But upon examining the cases, it will readily be seen that the reserving clause for the benefit of the debtor in preference to the recusant creditors is the capital vice which calls forth the most earnest condemnation of the courts. In *Burrill on Assignments* (p. 271, § 209), also in *Bump on Fraudulent Conveyances* (pp. 428, 429, 430, 436), this reservation of the surplus to the debtor against the claims of non-accepting creditors, is pronounced *per se* fraudulent, and avoids the deed at the suit of any complaining creditor. It is a matter of no little regret among the courts of the older States that they have so far favored insolvent assignees as to sustain the compulsory release clause so universally prevalent in those deeds of assignment for the benefit of creditors, and I find that in some of the new States west of the Mississippi the courts condemn such terms in deeds of assignment, and hold such deeds void on the face. *Duggan* v. *Bliss*, 4 *Col.*, 223, reported in 34 *Am. Rep.*, 80.

The counsel for the defendants placed great reliance upon the case of *Beck* v. *Burdett* (1 *Paige*, 305), which case, it is contended, establishes the doctrine that the mere naked reservation of a contingent surplus to the debtor does not vitiate a deed of assignment. I regret not having access to that case and the notes thereto by the editor of American Decisions (vol. 19, p. 436). But it was said in the argument before me that the assignment assailed there was only a partial assignment, and hence the distinction. I did hope to be able to examine the case, but circumstances prevented. I can only say that the law of that case, as contended for by counsel for the defence, is not the law of our State, either as defined by our courts in interpreting 13 Elizabeth nor by our legislature in declaring the law in section 2014

of General Statutes. I regard this last statute as fatal to the validity of Mr. Iseman's deed.

It is contended, however, that fraud is a question of fact, and that Iseman really intended no fraud upon his creditors; also that the reservation clause is utterly harmless, because there will certainly be no surplus after paying accepting creditors—in fact, that these will, in exhausting the estate, realize only a part of the debts due to them. In *Jacot* v. *Corbett* both these defences were interposed in behalf of Mr. Corbett, and I use this language of Chancellor Dunkin in answering them: * * * Whether a surplus will remain under such like assignments depends upon the value of the effects, the number and the amount of the debts, the number who accept or refuse, contingencies any or all of which may determine whether or not the debtor will receive a surplus. Surely, the validity of a deed will not be made to depend upon these contingencies. The law does not await the event of the administration of the estate to determine the character and effect of the stipulations of this deed, nor does it require a non-accepting creditor to await the result before he can assail it. So soon as executed, the law stamps it with fraudulent intent, discoverable on its face. It is a *presumptio juris de jure*, conclusive and irrebuttable, that fraud is intended, and the question is not affected by any facts arising *dehors* the deed.

Could I consider such evidence and throw the character of this old gentleman, M. Iseman, into the scale—a man who for perhaps more than three-score and ten years has borne an irreproachable character, who has been noted for honesty and integrity in all his business transactions—I would most cheerfully acquit him of all fraudulent intent in executing this deed. But I am constrained to say that the deed he has made, however honest in fact he may have been in so doing, is one that the law will not uphold against a resisting creditor. It needs but to be attacked to be overthrown.

It is therefore ordered, adjudged, and decreed, that until the further order of this court, the said debtor, M. Iseman, the said assignee, Junius H. Evans, and the said agent of creditors, Duncan Murchison, their servants and agents, be and they are enjoined and restrained from selling, &c.

The decree of Judge Wallace (also omitting his statement) was as follows :

The assignor states in his answer that he intended no fraud, and honestly intended to devote his property to the payment of his debts.   This statement is supported by the testimony in relation to what took place at the time of the execution of the deed. There is proof, also, that the claims of the accepting creditors will absorb the whole estate, and that there will not, therefore, be any surplus.  I am sure that Mr. Iseman did not conceive that he was doing a wrongful act.  His reputation for strict business integrity has been too long and too well established to be overthrown by the facts of this case.  Yet, if he has done what the courts hold is conclusive evidence of an intent to hinder and delay creditors, the law holds such act as to such creditors void and of no effect.  The nature of the act, too, must be determined by the act itself, and not by subsequent developments.  Why, if a surplus was not contemplated, direct it to be paid back to the assignor, and not make it · distributable among such of the general creditors as should not accept according to the terms of preference ?

To recur.   Does this reservation of a contingent right to the surplus destroy the deed ?   This question has been repeatedly discussed in our own courts, and always decided in the affirmative. The case of *Jacot* v. *Corbett* (*Chev. Eq.*, 71) is full to the point. The opinion in this case was prepared by Chancellor Dunkin, concurred in by Harper, chancellor, and by Chancellors Johnson and Johnston with hesitation.  In the subsequent case of *LePrince* v. *Guillemot* (1 *Rich. Eq.*, 219), this case of *Jacot* v. *Corbett* is quoted by Chancellor Johnston as authority for the principle, "that a reservation for the debtor's benefit was a direct fraud." *   *   *   This case (*Jacot* v. *Corbett*) has been again and again quoted in subsequent cases where the same question was raised. *LePrince* v. *Guillemot,* 1 *Rich. Eq.*, 219, already referred to ; *Stewart* v. *Kerrison*, 3 *S. C.*, 266.

In the deed here, the assignor has reserved to himself that which the general creditors failed to secure by accepting under the deed.   This case falls completely within the rule stated in *Jacot* v. *Corbett*, and I must hold it therefore void.  I have not here adverted to those of our cases referred to in the argument of

counsel, which relate to the right of an assignor to make preferences in the order of the payment of his debts, or to make releases a condition of preference, because I do not consider these rules at issue here.

Since all of our reported cases upon assignments by debtors, the act of 1882 has been passed. This is now to be found from section 2005 to 2016, inclusive, of the General Statutes. By section 2014 all right of preference which an assigning debtor had before is taken away, save only as to debts due to the public, and save only as to such creditors as may accept the terms of such assignment, and execute a release of their claim against the debtor. This same section denounces as absolutely null and void any assignment "in which any provision or disposition of the property so assigned is made or directed other than that the same be distributed among all creditors of the said insolvent debtor equally," save, as above stated, as to debts due the public and to releasing creditors. A provision, therefore, which directs that upon certain contingencies a surplus, if any, shall revert to the assignor, is obnoxious to the denunciation of this statute.

The judgment of *Jacot* v. *Corbett*, in the case above referred to, was obtained after the assignment was made by Corbett, and on the deed being set aside by the court, the assignees were ordered to pay out of the funds in their hands under the assignment the costs of the case and Jacot's judgment.

It is therefore ordered and adjudged, that the deed of assignment made by Manuel Iseman to Junius H. Evans, Esq., be set aside and vacated as null and void, and that the said Junius H. Evans do pay to H. B. Claflin & Co., out of the funds in his hands as assignee of Manuel Iseman, the sum of seven thousand eight hundred and ninety dollars and forty cents, with interest thereon from the date of the judgment for that sum obtained by H. B. Claflin & Co. against Manuel Iseman, together with the costs of the action in which the judgment was obtained, as well as the costs of this action.

*Messrs. W. W. Sellers* and *Johnson & Johnson*, for appellants.

*Mr. J. N. Nathans*, contra.

September 17, 1885. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Manuel Iseman, merchant, of Marion, S. C., became embarrassed, and on January 29, 1884, executed an assignment of all his property, real and personal, to Junius H. Evans, Esq., for the benefit of his creditors, upon the following trusts: First, to pay all the expenses necessarily incident to the execution of the trusts therein imposed; second, to pay all his creditors in equal proportions, that is, *pro rata*, if the amount in his hands should not be sufficient to pay those in full who should come in and signify their acceptance under the deed of assignment, within four months from the date, provided said creditors so accepting should execute a full release and acquittance of their respective debts, and receive their respective proportions from the assignee in full payment thereof; third, "he shall, after the payment of all the creditors who accept, pay over the balance to me, if any balance should remain in his hands," &c.

Junius H. Evans accepted the trusts declared by the deed, and several of the creditors, in person or by agent, met and appointed Duncan Murchison, Esq., their agent in the management of the assigned estate.

H. B. Claflin & Co., of New York, held a large demand against Iseman, contracted in 1883. They did not accept under the assignment, but sued on their claim, and on April 23, 1884, obtained a judgment for $7,890.48. Execution entered on the judgment was returned unsatisfied, and they then instituted these proceedings against Iseman, his assignee, and the agent of creditors, "to set aside the deed of assignment," and alleged "that the deed is fraudulent and void upon its face, in that it reserves to the assignor the benefit of any surplus which shall remain after the payment in full of the creditors who shall accept under the provisions of the said deed, to the exclusion of all other creditors," and that it was made and executed by the said defendant "to hinder, delay, and defraud his creditors," &c.

Judge Hudson granted an order staying proceedings under the assignment until further order, and the cause coming on for hearing before Judge Wallace, he ordered and adjudged, "That the deed of assignment be set aside and vacated as null and void, and that the said Junius H. Evans do pay to H. B. Claflin & Co.,

out of the funds in his hands as assignee of Manuel Iseman, the sum of $7,890.40, with interest thereon from the date of the judgment for that sum obtained by H. B. Claflin & Co. against Manuel Iseman, together with the costs of the action in which the judgment was obtained, as well as the costs of this action," &c.

From this decree the defendants appeal to this court, upon the following grounds:

"I. Because his honor erred in holding that the assignment of M. Iseman to Junius H. Evans for the benefit of his creditors is void, from the fact that it is provided in the same that after the payment of all the creditors who accept, the assignee do pay over the balance to the assignor, if any balance should remain, as fraudulent, though there was no fraudulent intent.

"II. Because his honor erred in holding that the assignment of M. Iseman, made to Junius H. Evans for the benefit of his creditors, was null and void from the fact that he inserted in the same a third clause, as before stated.

"III. Because his honor erred in holding that the assignment is null and void, in consequence of the third clause being obnoxious to the statute of February 9, 1882, though it is admitted by the plaintiffs and decided by the court that M. Iseman had really no fraudulent intent when he executed the assignment.

"IV. Because his honor erred in holding that the assignment is null and void, from the fact that it is fraudulent on its face, and obnoxious to section 2014 of the General Statutes.

"V. Because his honor erred in ordering the assignee to pay over the funds in his hands to H. B. Claflin & Co., instead of ordering him to distribute the sum equally among creditors as equitable assets."

The order granting the injunction and the decree of the Circuit Judge are both so clear and full that it is difficult to add anything to them. All that we can do is to put in form the conclusion already announced.

Until the recent statute (1882) in regard to assignments for the benefit of creditors, the law allowed a debtor in failing circumstances to assign his estate for the benefit of his creditors, and in doing so to prescribe the order in which they should be paid, or to make preferences among them. *Hill* v. *Rogers, Rice Ch.*, 7;

2 *John. Ch.*, 578.   It was also, after some discussion as to the morality and policy of such allowance, finally settled that the debtor might attach the condition that the accepting creditors should execute a release in full.  *Niolon* v. *Douglas et al.*, 2 Hill . *Ch.*, 446.   As it seems to us, these great privileges were allowed to the debtor always upon the fundamental condition .that the assignment should *bona fide* include his whole estate (*LePrince* v. *Guillemot*, 1 *Rich. Eq.*, 187), and without reserving to himself, directly or indirectly, any part of it, until all the debts are paid.

This view is expressly sustained by the case of *Jacot* v. *Corbett*, *Chev. Eq.*, 76.   In this last named case, the assignee was directed to pay certain claims in full, and then, "out of the surplus, to all the other creditors, who would accept the same in satisfaction of their demands, and execute a release thereof to the said James Corbett, by the first January next ensuing the date thereof, forty cents in every dollar of the amount of their claims, if the same was adequate thereto ; and if not, to distribute such surplus ratably and in proportion among such creditors.   And after payment of the said forty cents in every dollar, then if any surplus should remain, &c., to pay over the same to the said James Corbett, his executors, administrators, or assigns," &c.   After mature consideration, it was held that, as against the plaintiff, the assignment was void and of none effect. ' It is true that there was in the case the other matter—limiting the payment to general creditors to forty cents in the dollar (which was not reached)— but a careful perusal of the judgment, we think, will show that the vice which proved fatal was the reservation of the surplus, if any.

Chancellor Dunkin, in his Circuit decree, which was affirmed in the Appeal Court, says: "But a debtor has no right to place his property beyond the reach of his creditors under the ordinary process of the law, prescribe the terms in which they participate in his effects, and secure to himself, in case of neglect or refusal, a control over such funds, and thereby the power to make other terms.   Such deed is a direct violation as well of the terms as the policy of the statute (13 and 27 *Eliz.*).   The purpose is to hinder and delay creditors, by transferring a colorable title to a

third person, while the real ownership is still in the assignor, unless the terms prescribed are assented to. No case, I think, can be found sanctioning an assignment which sustains such control in the debtor," citing *Hislop* v. *Clark*, 14 *Johns.*, 462; *Austin* v. *Bell*, 20 *Johns.*, 448; and *Mackie* v. *Cairns*, 5 *Cow.*, 585; and explaining *Lynah* v. *Lynah* (Mss.), and *Murray* v. *Riggs*, 15 *Johns.*, 571. As we understand it, this case of *Jacot* v. *Corbett* has never been overruled, but, on the contrary, has been cited and approved. See *Stewart* v. *Kerrison*, 3 *S. C.*, 266.

But it is strongly urged upon the court that in this case Mr. Iseman, the debtor (who, we are pleased to state, has the reputation of an honest man), did not, in signing the deed prepared for him, intend to do anything wrong; that the reservation was merely theoretical, in fact "hypothetical" and "supposititious," and that the actual fact is that the assigned estate amounts to very little over $12,000, and creditors representing $29,000 of claims have already accepted the terms of the assignment, showing conclusively that there will be no "balance" going back to the debtor under the reservation, and that therefore it will be an anomaly to declare an assignment fraudulent and void in law which was executed without fraudulent intent, and does not operate as a fraud upon any one. This view at first strongly impressed some members of the court, but upon careful consideration of the principles involved and our decided cases, we feel constrained to concur in the conclusion reached by the Circuit Judge. Precisely the same view was urged in the case of *Jacot* v. *Corbett, supra*, in which it was solemnly held that the argument was not sound. Although it does seem to be a hard case, the better opinion seems to be that "the character of the transaction must be determined by the interest of the parties at the time, and not by subsequent events." At the time the assignment was executed, it was certainly thought that there might be "a balance," or, as we suppose, the reservation would not have been made.

We have not been able to examine all the cases cited by the appellants, but from those to which we have had access it seems to us that proper consideration was not always given to the dis-

tinction between a trust resulting from the circumstances and an express reservation in the deed of assignment itself. We have examined the case of *Beck* v. *Burdett* (1 *Paige*, 305), which seemed to be the case principally relied on by the appellants. We do not consider that case as at all analogous to this. That did not pretend to be a general assignment of the debtor's property for the benefit of all his creditors, with a condition requiring them to release any balance that might be unpaid; but, on the contrary, it was, in the exercise of the right which he had at that time to prefer one creditor, a partial assignment to pay certain debts in full and to return the balance if any. It was, in effect, the payment in the manner provided of these particular creditors, and, of course, if too much was paid, it should be returned. At all events, the cases cited were not South Carolina cases, and we regard our own cases as controlling upon us, and in so doing we cannot avoid the conclusion that they are decisive of this case even under the old law.

But in 1882 the legislature passed an act upon the subject of assignments for the benefit of creditors, which will be found in the General Statutes, from sections 2005 to 2016, inclusive. It will be observed that section 2014 expressly takes away from the insolvent debtor the right to make preferences, which, as we have seen, existed before the act, "save only as to debts due the public, and as to such creditors as may accept under the assignment and release." The act does not in express terms directly touch the subject of a reservation to the debtor or its effect. But it is manifest that the intent was to restrict the rights of debtors in making assignments, and we cannot doubt that its operation must be to strengthen the decisions that a reservation to the debtor was unlawful. The act specially denounces preferences, and the obvious effect of a reservation is either to withdraw so much of the debtor's property from his creditors, or at least to afford him the opportunity to make new terms. For instance, under this law such a partial assignment as was dealt with in the New York case of *Beck* v. *Burdett*, *supra*, would be impossible. As stated by the Circuit Judge, this section denounces as absolutely null and void any assignment "in which any provision or disposition of the property so assigned is made or directed other than that

the same be distributed among all creditors of the said insolvent debtor equally," &c. A provision, therefore, which directs that, upon certain contingencies, a surplus, if any, shall revert to the assignor, is obnoxious to the denunciation of this statute.

What, then, must be the practical effect of the assignment being declared void as to the plaintiffs? Other creditors have accepted the assignment and thereby undertaken to release the remainder of their debts, upon receiving their *pro rata*, estimated with reference to the whole assets. Shall the plaintiffs be paid in full, thereby reducing to that extent the assets for distribution? This seems hard, but as the assignment has been declared void *quoad* the plaintiffs, it is as to them the same as if it had never been made; and as before the assignment Iseman had property sufficient to satisfy their judgment and execution, we do not see how that result can be avoided.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

In this case a petition for rehearing was filed, upon which the court, on November 27, 1885, endorsed the following order:

We have carefully considered this petition, and as it does not bring to our attention any material fact or important principle which was overlooked in the decision of the case, the petition must be dismissed.