7771

### FORBES v. BOWMAN.

1. ASSIGNMENT—FRAUD—STATUTE OF EAIZABETH—ESTOPPEL—CORPORA-
   TIONS.—A trust deed and agreement made by an individual and a
   corporation which he practically owned with certain of their
   creditors held to be obnoxious to the assignment law and the statute
   of Elizabeth because: (1) the debtors were insolvent at the time of
   its execution; (2) the intention was to convey *all* the property of
   the debtors; (3) it contemplated paying only the creditors mentioned
   in the deed; (4) it provided for return to debtors of property left
   after paying creditors named therein, and made no provision for
   other creditors. But it is further held that the president of a
   creditor corporation voluntarily executing the deed for his corpora-
   tion and accepting for it the benefits of the same, is estopped as an
   individual from alleging against the validity of the deed and agree-
   ment after the other parties had incurred expense in carrying it out.
   *Divided Court as to estoppel.*

2. ADDITIONAL GROUNDS.—Where the language of a Circuit decree
   indicates that the Court had given even slight consideration to a
   point, it is not necessary for respondent's attorneys to give notice
   that they would rely on such point as an additional ground in
   support of the Circuit decree.
   *Court divided as to consideration by trial Court.*

3. REHEARING refused.

Before GAGE, J., Sumter, February, 1910.    Affirmed.

Action by W. S. Forbes against W. A. Bowman, Sumter
Banking and Mercantile Company, the Bank of Sumter,
and others.   Plaintiff appeals from Circuit decree.

*Mr. L. D. Jennings,* for appellant, cites: *Deed void under
statute of Elizabeth:* 2 Bail. 122; 3 S. C. 286; 27 S. C. 272;
42 S. C. 487; 40 S. C. 1; Chev. Eq. 71; 4 Cyc. 184-5; 23
S. C. 416; *and under the assignment act:* Code 1902, 2047;
23 S. C. 416; 26 S. C. 441; 42 S. C. 475; 33 S. C. 471.
*The instrument is an assignment:* 3 S. C. 266; 44 S. C. 183;
29 S. C. 491; 22 S. C. 111; 26 S. C. 441; 32 S. C. 492.
*Assignment covers whole estate:* 4 Cyc. 182; 46 S. C. 167;

42 S. C. 285. *Defendants cannot help their position by offering to let plaintiff in:* Chev. Eq. 71.

*Messrs. Lee & Moise,* contra, cite: *The debtors are not insolvent:* 33 S. C. 451; 7 Col. on Bank. 6; 53 S. C. 364; 42 S. C. 483. *Deed not void under statute of Elizabeth:* Code 1902, 2369, 2647, 2648, 2649; 13 S. C. 526; 52 S. C. 129.

## STATEMENT OF FACTS.

This is an action to set aside a trust deed, on the ground that its provisions are in violation of the assignment law and the statute of Elizabeth.

The facts are thus stated in the decree of his Honor, the Circuit Judge:

"The history of the cause is this: The defendant, W. A. Bowman, was an extensive planter and country merchant; to facilitate his operations he organized the defendant company, called the Sumter Banking and Mercantile Company, with a capital stock of $33,000, of which Bowman was president and owner of all but ten thousand dollars of the stock; the plaintiff was owner of three thousand dollars of this stock, which he sold to Bowman in January, 1906, for par, and took Bowman's note therefor, due the following October, and held the stock as collateral, to secure the payment of the note; and that note, which was not paid, is the occasion of this action. In the fall of 1907, the year of the panic, Bowman and his other self, the Sumter Banking and Mercantile Company, could not meet their obligations; like most men so circumstanced, they had theretofore secured some of their larger creditors, by lodging with them as collateral, sundry choses in action, and amongst these were the Bank of Sumter, named as the third party to the deed of trust, and seven banks and other corporations, named as the fourth party to the deed of trust, and referred to therein as the 'principal creditors' of the Sumter Banking and Mercantile Company; in September, 1907, Bowman, the Sumter Banking and Mercantile Company, the Bank of

Sumter, and the principal creditors referred to, executed an elaborate and carefully drawn agreement, called a deed of trust, and therein constituted R. I. Manning and G. A. Lemmon, two reputable gentlemen of Sumter, trustees, to do the things written in the deed, and they accepted the trust; in November, 1907, the plaintiff brought this action against all the above mentioned parties, to set aside the deed of trust, and for the appointment of a receiver, to administer the property of the debtors according to law. The Circuit Court refused to appoint a receiver. The master took and has reported the testimony, but nothing else.

"The complaint is not in terms a creditor's bill, but might be made so with slight amendments, that was manifestly in the pleader's mind, and the pleading will be so regarded. It charges two breaches of the law, first that the transactions alleged, make a case of assignment with preference against section. 2647 of the Statutes; and, second, that the transactions alleged, come within the statute of Elizabeth, enacted at section 2369 of the statutes.

"The deed does not purport to be an assignment, but the contrary. If, however, it be in effect an assignment, it should be so held, regardless of its pretensions.

"The defendant Bowman denies that he was insolvent when the deed was made; and, if he was not, of course he had the right to make the deed, so far as that statute is concerned.

"The Sumter Banking and Mercantile Company makes the same denial.

"These two may be considered as one person, for they are practically so, and they have all along acted together. On their face, Bowman's assets were, in round figures, $175,000; and his liabilities were, in round figures, $126,000. On their face the Sumter Banking and Mercantile Company's assets were, in round figures, $281,000; and its liabilities were, in round figures, $202,000.

32—87

"Or the joint assets were $456,000, and joint liabilities were $328,000.

"Of this large joint assets there was:

| | |
|---|---:|
| Real estate | $ 68,000 00 |
| Accounts due by customers | 305,500 00 |
| Merchandise | 11,600 00 |
| Crops | 34,000 00 |
| Live stock and tools | 11,400 00 |

$430,500 00

"The discrepancy of $26,000 consists in stock, which Bowman held in the Sumter Banking and Mercantile Company, of which no account ought to be taken, in the estimation of joint assets.

"On their face, therefore, the joint assets exceeded the joint liabilities, by one hundred thousand dollars. The liabilities are fixed and undisputed. The value of the assets is disputed. On that issue the plaintiff tendered only two witnesses, P. G. Bowman, who was bookkeeper of the Sumter Banking and Mercantile Company, and Wilder, the auditor of Sumter county. The items of the assets, which were surcharged, were the real estate and the accounts due by creditors.

"The testimony of Mr. Harby, a witness for the defense, proves, conclusively, that the real estate was not overvalued. The testimony offered to disprove the value of the accounts due, was that of the auditor of the county, who swore that these debtors had no taxable property of consequence. * * *

"The defendants proposed to allow the plaintiff to come in as a party to the contract, but he refused to do so.

"The testimony does not throw any light, on the intention of the makers of the deed * * *.

"I am, therefore, of the opinion that there has been shown no breach of the statute governing assignments.

"There yet remains to inquire, if the transactions violated the statute of Elizabeth.

"That statute was not pleaded in terms by the complaint, but it was relied on in oral and written argument of the plaintiff's counsel. All the complaint charges about fraud, is in these words: 'That the said assignment is a fraud, upon the creditors of the said W. A. Bowman, other than those who are parties to the said assignment, and especially is a fraud on this plaintiff.'" * * *

The allegations of the complaint, material to the questions presented by the exceptions, are contained in the seventh paragraph, which is as follows: "That said assignment is in violation of the laws of the State of South Carolina, in that it does not give all of the creditors of the said W. A. Bowman, the management and control of the property of the said W. A. Bowman, but gives preference to the parties to said assignment, to the exclusion of the plaintiff; and that it provides, in paragraph 25 of said assignment, for the sale of the property of the said W. A. Bowman and the application of the proceeds of the sale, to the liquidation of the indebtedness remaining due to the parties to said assignment, to the exclusion of the plaintiff, and it has not provided that the same shall be distributed among all creditors of the said W. A. Bowman equally, in proportion to the amount of their demands, without preference or priority of any kind whatsoever, and in that all of the paragraphs quoted from said assignment, show a preference in favor of the parties to said assignment, and in that said assignment reserves to the defendant, W. A. Bowman, a reservation of said property to him, and that it is thereby shown, that it is not an assignment, exclusively for the benefit of the creditors of the said W. A. Bowman, but it shows on its face that it is also for the benefit of the said W. A. Bowman, and thereby in violation of the law of the State of South Carolina, and that it provides for the reservation to the said W. A. Bowman, of the property so assigned by him in said assignment for the benefit of his creditors; and in that said

assignment shows, that it is also for the benefit of said W. A. Bowman, in that it is provided in said assignment, that the trustees shall continue the farming operations of the said W. A. Bowman, on the property so assigned, for the benefit of the said W. A. Bowman and the creditors of the said W. A. Bowman to said assignment."

W. A. Bowman claims that he did not by the trust deed transfer, amongst other property, the following:

"His stock in the Sumter Banking and Mercantile Company of the par value of.............. $25,200 00

Interest in Sparks Mfg. Co......·.......... 2,000 00

Debt due by J. W. Durant................. 500 00

Stock in Sumter Cotton Warehouse Co....... 1,000 00

Interest in Cotton Compress Co............. 2,000 00

Pair of horses ......................... 625 00

Buggies, etc............................. 200 00

Personal accounts due him................ 2,600 00

40 or 45 shares of stock in the cotton factory
　　value small, though something.

11 shares stock Equitable Building and Loan
　　Association ......................... 924 00

10 shares stock Palmetto Building and Loan
　　Association ......................... 340 00

Stock in Farmers' Gin Co................. 200 00

Stock in Elks' Home Co.................. 150 00

Land in Sumter ....................... 750 00

Leasehold rights as to Barnett land, rented for
　　three years to W. A. Bowman at $625.00
　　per annum, total rent for three years,
　　$1,875.00, said land subrented by W. A.
　　Bowman at $1,125.00 per annum, total
　　rents to be collected, $3,375.00; value of
　　leasehold rights (fol. 629)........... 1,500 00

"These assets, exclusive of the Sparks Mfg. Co. and the Durant debts, amount to $35,464.00."

The following statement, as to the liabilities and assets

of W. A. Bowman, appears in the argument of the respondents' attorneys:

"Exclusive of endorsements for the Sumter Banking and Mercantile Company, statement is as follows:

### LIABILITIES.

| | | |
|---|---:|---:|
| Due Bank of Sumter...................\$ | 5,125 | 17 |
| Due open account for merchandise, Dalzell... | 3,540 | 25 |
| Due S. B. & M. Co....................... | 17,472 | 05 |
| | \$26,141 | 47 |
| To which add plaintiff's debt............... | 3,286 | 66 |
| Total ........................... | \$29,428 | 13 |

### ASSETS.

| | | |
|---|---:|---:|
| Stock of merchandise ....................\$ | 3,922 | 43 |
| Equity Dalzell place ..................... | 27,040 | 00 |
| Equity Knox place, one-half interest........ | 8,788 | 00 |
| Equity city property ..................... | 5,680 | 00 |
| Total ........................... | \$45.430 | 00 |
| Deduct liabilities ....................... | 29,428 | 13 |
| Net ........................... | \$16,002 | 30 |

"Add property not conveyed by trust deed and not included in first statement:

| | | |
|---|---:|---:|
| Stock Sumter Cotton Warehouse...\$1,000 | 00 | |
| Interest, compress ............... 2,000 | 00 | |
| Horses, \$625; buggies, \$200....... 825 | 00 | |
| Equitable Building and Loan...... 924 | 00 | |
| Palmetto B. & L. Ass'n........... 340 | 00 | |
| Stock Farmers' Gin Co........... 200 | 00 | |
| Stock Elks' Home Co............. 150 | 00 | |
| Land, Sumter .................. 725 | 00 | |
| Leasehold, Barnett place.......... 1,500 | 00—7,664 | 00 |
| Total net worth ...................\$23,666 | 30 | |

This is exclusive of stock in Sumter Banking
    and Mercantile Company.............. 25,200 00
J. W. Durant debt, secured by the stock S. B.
    & M. Co............................    500 00
Interest Sparks Mfg. Co...................  2,000 00
Personal accounts due him.................  2,600 00

Total additional net worth...........$30,300 00"

After stating the reasons for his conclusions his Honor,
the presiding Judge, thus concludes his decree: "I am, there-
fore, of the opinion that there is no ground to set aside the
deed in issue, and it is so ordered." The plaintiff appealed
from said decree.

### OPINION.

The opinions in this case were filed December 1, 1910,
but held up on petition for rehearing until

February 1, 1911. The following opinion was deliv-
ered by

MR. JUSTICE GARY. (After stating the facts.) The
first question that will be considered is, whether there
was error on the part of his Honor, the Circuit Judge, in
not rendering judgment in favor of the plaintiff, for the
amount of the note mentioned in the complaint. The
record does not show, that the Circuit Judge passed upon the
question, whether the plaintiff was entitled to judgment on
said note, nor does the decree purport to be final upon all
the issues.

The plaintiff can, therefore, ask for judgment when the
case is remanded.

The next question for determination is, whether there
was error on the part of the Circuit Judge, in concluding
that the deed was not void under the assignment law. In
reaching a conclusion as to this question it will be
necessary to determine several facts: (1) Were W.
A. Bowman and the Sumter Banking and Mercan-

tile Co. insolvent when the deed was executed.? The recitals in the deed, the statement in the decree and the testimony satisfy us, after most careful consideration, that not only the Sumter Banking & Mercantile Co., but W. A. Bowman, also were insolvent at that time.

We do not deem it necessary to state, in detail, the facts and circumstances upon which this conclusion is based. There is one fact however to which we desire to call special attention. The statement of the liabilities and assets of W. A. Bowman hereinbefore set out, shows conclusively that his additional liability as endorser, on the notes and obligations of the Sumter Banking and Mercantile Co. made him hopelessly insolvent.

(2) Did W. A. Bowman intend to convey and assign, all his property both real and personal? The sixth section of the deed is as follows: "That the said party of the second part (W. A. Bowman) shall forthwith and by this instrument, convey and assign unto the said trustees all of his property real and personal." * * * The twenty-third section recites, that "all of the accounts and choses-in-action, of the party of the first part, and of the said W. A. Bowman, have heretofore been assigned to the Bank of Sumter, except such as were specially assigned to other creditors." These sections show that prior to the deed, W. A. Bowman had disposed of all his accounts and choses-in-action, and that it was his intention, when the deed was executed to convey and assign all his property, both real and personal, and that no part thereof was reserved to him.

The respondents' attorneys, however, contend that the force and effect of the provisions of these sections were rendered ineffectual, for the following reasons, to wit: "It cannot be contended that the deed has the legal effect, of conveying all of Bowman's property, for the reason that the evidence shows, that the trustees became possessed of all property and assets actually conveyed, and claimed no other property or assets than those of which they were possessed."

In other words, that a breach of duty on the part of the trustees, in failing to take possession of the property conveyed and assigned to them, would defeat the right of an outside creditor to have the terms of the deed enforced. It is only necessary to state such a proposition to show that it is untenable, and would subject the trustees to liability, for a breach of duty.

(3) Did the deed contemplate that a surplus of the proceeds should be returned to W. A. Bowman before *all* his creditors were paid? This question is easy of solution, if we but keep in mind, that the words, "the creditors" have reference to those who were parties to the deed, and that the words, "the creditors" and "said creditors" were used interchangeably. We deem it only necessary to refer to section thirteen of the deed, to show that this question must be answered in the affirmative.

(4) Did the deed intend a preference to those creditors signing it over other creditors who might not see fit, to accept its provisions? The deed is quite lengthy and we shall not undertake to discuss, separately, the provisions of the various sections. We desire however to call special attention to section thirteen, which contains this provision: "That this agreement may, by endorsement hereon in writing, by the party of the third part, and of all *the said creditors* be continued in full force, in all of its terms and provisions, after December 31st, 1908, for one year, and from year to year thereafter, until all of the indebtedness due to the said party of the third part, *and the said creditors* shall have been *fully paid and liquidated.*" It then provides that the surplus shall be conveyed to the party of the first part, and to *W. A. Bowman,* but makes no provision for those other than "the said creditors." This section not only gives a preference to "the creditors" in the distribution of the funds, but in the management of the trust estate.

We are therefore forced to the conclusion that the deed was null and void under the assignment law.

The last question for consideration is whether the deed was obnoxious to the statute of Elizabeth. The deed shows upon its face, that the enforcement of its provisions would necessarily tend to hinder and delay (perhaps indefinitely) the plaintiff and other creditors of W. A. Bowman in the collection of their claims, who might not see fit to accept its terms. This fact alone is sufficient to show that the deed was repugnant to said statute.

The question whether the plaintiff is estopped from maintaining this action, by reason of the fact, that he, as vice president of the Richmond Guano Co., alone signed the trust deed in behalf of that corporation, was not ruled upon by his Honor, the Circuit Judge, and no notice was served by the respondents' attorneys that they would rely upon such proposition to sustain the judgment of the Circuit Court. Therefore, the question is not properly before this Court for consideration.

For these reasons I think the judgment should be reversed.

MR. CHIEF JUSTICE JONES *concurs.*

MR. JUSTICE WOODS: The trust deed executed by W. A. Bowman and the Sumter Banking and Mercantile Company to R. I. Manning and others as trustees for creditors could hardly have been made more complex and difficult to understand. Careful consideration leads me to the conclusion that no moral fraud or wrongdoing was contemplated, but I concur in the conclusions reached by Mr. Justice Gary (1) that the debtors were insolvent when the deed was executed, (2) that the intention was to convey the entire property of W. A. Bowman as well as that of the Sumter Banking and Mercantile Company, (3) that the deed contemplated the payment of the creditors mentioned in the deed to the exclusion of other creditors, and (4) that it provided for the return of the

surplus of the property to the debtors instead of its application to the claims of other creditors not mentioned in the deed. Under this state of facts it inevitably follows as a conclusion of law that the deed was voidable at the instance of creditors not provided for because obnoxious both to the assignment act and to the statute of Elizabeth. *Jacot* v. *Corbett,* Cheves' Equity 71; *Stuart* v. *Kerrison,* 3 S. C. 266; *Claflin* v. *Iseman,* 23 S. C., 416.

In reaching this conclusion notice should be taken of the following provision appearing in the deed as the twenty-fourth clause: "That the trustees shall apply the proceeds of sale and collections from the individual property of W. A. Bowman, only, to the payment of the individual debts and obligations of the said W. A. Bowman, including his endorsements and guaranties." If this stood alone it could well be construed as providing for a ratable distribution to all the creditors of W. A. Bowman, but this construction would be inconsistent with and entirely defeat the thirteenth clause which provides that after the creditors specially mentioned in the deed have been paid, the surplus shall be paid over to the debtors. If the two clauses are to be construed together and both given effect then "the individual debts and obligations of the said W. A. Bowman" mentioned in the latter clause must be held to refer only to those debts and obligations mentioned in the thirteenth clause. If the two clauses are to be regarded absolutely irreconcileable then that which appears first in the deed and provides that the debtors and not the creditors shall receive the surplus in the hands of the trustees must be given effect in preference to that which is afterwards written. It is, however, but just to the parties interested to say that they made an offer to the plaintiff that he should come in and have the benefit of the terms of the deed as if the twenty-fourth clause of the deed stood alone, unlimited by the thirteenth clause; and the Circuit Judge held

that he could yet come in and receive all the benefits of the deed of trust. There was no exception to this finding.

Notwithstanding the conclusion that the deed was voidable under the statute of Elizabeth and the assignment statute, it seems to me clear that the plaintiff is estopped from attacking the transaction. The suit is at the instance of the plaintiff alone and for his benefit alone. He does not sue for himself and other creditors, and if there be other creditors of W. A. Bowman, the record does not disclose that any of them have complained or sought to set aside the deed. Therefore if the plaintiff has taken action which makes it inequitable that he should be heard to attack the deed the case is at an end.

On the subject of estoppel the Circuit Judge said in his decree: "I have not considered the circumstance that the plaintiff, as president of a corporation, signed the deed of trust for his corporation as one of the principal creditors. I do not think it necessary to decide upon the legal effect of such an act; but its moral force is of consequence when a chancellor comes to ask himself in the consideration of a cause whether a wrong has been done." This language, it is true, does not indicate very clearly the extent to which estoppel entered into the conclusion of the Court, but it does indicate very clearly that it was taken into consideration. This being so, when respondents' counsel relied on estoppel in this Court they were not introducing into the case a new ground not relied on by the Circuit Judge. It was not necessary, therefore, for respondents' counsel to give the notice required by rule five that they would rely upon estoppel as an additional ground in support of the Circuit decree. At the least, the applicability of the rule is extremely doubtful; and when that is so, it should not be applied so as to exclude an issue of vital importance to a just decision on the merits of the case.

The execution of the trust agreement and conveyance on the part of the Richmond Guano Company was by the hand of the plaintiff as its vice president. An officer of a corporation is not estopped as an individual by signing a deed for the corporation under the direction of the board of directors or superior officers of the corporation. The just rule, however, and that which is supported by the current of later judicial expression is that estoppel arises against one as an individual when he, as an officer of a corporation or in any representative capacity, voluntarily participates in the making of a deed or other transaction on behalf of the corporation, and the other parties to the transaction incur expense or are put at a disadvantage by acting under the agreement in reliance upon his approval and participation. This is the principle on which the following cases were decided. In *Hancock* v. *Caskey,* 8 S. C. 282, it was held that when lands were sold under a decree for partition, without reservation of the growing crops, a guardian *ad litem* of the infant defendants was estopped from claiming such crops as his property. In *Mortgage Co.* v. *Walker* (Ga.), 46 S. E. 426, the act of the plaintiff in signing a deed as agent was held to estop him from asserting title in himself. The Court said: "The deed may have been the act of Mrs. Walker, but the recitals of fact and the representations bound the conscience of the agent, and estopped him from using any right or title outstanding in himself." In *Bank* v. *Bank* (N. C.), 50 S. E. 848, one C. was the president of a corporation which had conveyed the property in dispute. The Court said: "True, this was a conveyance by the corporation, and therefore is not an estoppel against C. as an individual. But he signed the deed for the company as its president, and this covenant that the property is free from incumbrances amounts to a representation by him that this is true."

In *Wells* v. *Steckelberg* (Neb.), 66 Am. State Rep. 529, it was held that if one assumes in a representative capacity

to sell and convey to another the entire estate in land, he is estopped from setting up an estate therein in his own right against the purchaser. In *Schnable* v. *McNeill* (Texas), 110 S. W. 558, an administrator conveying under order of the Court property in which he as an individual owned a life interest was held to pass his own interest by estoppel. In *Tomlinson* v. *Drought* (Tex.), 127 S. W. 262, it was held that where executors conveyed property under a trust deed as belonging to the estate, they were estopped from claiming that any part of it belonged to them personally. In *Brock* v. *Rogers* (Mass.), 69 N. E. 334, one who by leave of Court had sold as guardian land standing in the name of his ward was not allowed to set up an adverse title in the land in himself. See also 11 A. & E. Ency. 397 and 16 Cyc. 712.

There is a presumption that an officer who signs a deed on behalf of a corporation participated in the negotiations which led up to it, and approved its execution. If the plaintiff was compelled by his superiors to sign the deed or if he, as an individual, intended to attack it, good faith required him to speak before he participated in it, and before the defendants had acted under it and incurred the expenses necessarily incident to the execution of the trust. The record affords no explanation of the plaintiff's course in participating in the trust agreement on behalf of a corporation in which he was interested, and afterwards attacking the agreement as illegal and fraudulent when the defendants had incurred expense in carrying it out. Under the facts here appearing it seems to me that the plaintiff is estopped from alleging against the validity of the trust deed and agreement.

The judgment of the Circuit Court stands affirmed by reason of an equal division of this Court.

MR. JUSTICE HYDRICK *concurs.*

February 1, 1911. PER CURIAM. The questions referred to in this petition having been fully considered in the opinion of the Court, it is ordered that the petition be dismissed and the order staying the remittitur be revoked.